**BURLINGTON NORTHERN INC.,**
Plaintiff,

v.

**INTERSTATE COMMERCE COMMIS-SION and Matthew Paolo, Director, Bureau of Accounts, Defendants,**

and

**United States of America, Intervening Defendant.**

**Civ. A. No. 3471-70.**

United States District Court, District of Columbia.

Jan. 13, 1971.

Richard J. Flynn, Sidley & Austin, Washington, D. C., Robert W. Ginnane, Galland, Kharasch, Calkins & Brown, Washington, D. C., for plaintiff.

Fritz R. Kahn, Bernard A. Gould, Leonard S. Goodman, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Robert Werdig, Asst. U. S. Atty., U. S. District Court, Washington, D. C., for the United States.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

This cause having come before the Court on December 22, 1970, for hearing on cross motions for summary judgment filed on behalf of plaintiff, Burlington Northern Inc. and on behalf of defend-ants and the intervening defendant; and the Court having considered said motions, the affidavits and other materials filed in support of and in opposition to each motion, and the memoranda and oral argument submitted by counsel for each of the parties, the Court makes the following findings of fact and conclusions of law:

1. Plaintiff Burlington Northern Inc. is a Delaware Corporation having its principal place of business at St. Paul, Minnesota. Burlington Northern Inc. is a common carrier by railroad within the meaning of Section 1(1) of the Interstate Commerce Act, 49 U.S.C. § 1(1), and, accordingly is subject to the regulations provided in Part I of that Act (49 U.S.C. §§ 1–26).

2. W. N. Ernzen is a resident of the State of Minnesota, and is Vice President—Finance of Burlington Northern Inc. In that capacity, he is the senior corporate officer having direct responsibility for the creation and custody of the documentary materials which are the subject of this suit.

3. Defendant Interstate Commerce Commission is an agency of the United States, created pursuant to Section 11 of the Interstate Commerce Commission Act (49 U.S.C. § 11), and having its principal offices of business at Washington, D. C. By statute (49 U.S.C. § 12(1)), the Commission is charged with the responsibility for executing and enforcing the provisions of Part I of the Interstate Commerce Act, and is authorized to request that any United States Attorney institute and prosecute proceedings necessary to enforce the provisions of Part I of the Act and for punishment of all violations thereof. Upon request of the Commission, any United States Attorney is required to institute and prosecute such proceedings.

4. Under Section 20(5) of the Interstate Commerce Act, the Commission is authorized to prescribe the form of any and all accounts, records, and memoranda to be kept by carriers, and to inspect and copy "accounts, books, records, memoranda, correspondence, and other docu-

ments of such carriers." Section 20(9) authorizes the Attorney General at the request of the Commission to seek a writ of mandamus to compel compliance with Section 20(5). Section 20(7) (a) provides for a forfeiture of not to exceed $500 per day if a carrier fails or refuses to submit the materials covered by Section 20(5) to the Commission or its authorized agents, accountants, or examiners, to be recovered in a proceeding instituted in the name of the United States pursuant to Sections 20(7) (e), 16(9), and 16(10) of the Act.

5. Defendant Matthew Paolo, a resident of the State of Maryland, is Director, Bureau of Accounts, Interstate Commerce Commission, and, in that capacity, is the administrative official charged with carrying out the Commission's responsibilities under Section 20 of the Interstate Commerce Act (49 U.S.C. § 20) in accordance with the directions of the Commission.

6. On or about September 4 and September 25, 1970, Matthew Paolo, in his capacity as Director, Bureau of Accounts, Interstate Commerce Commission, and relying upon the provisions of Section 20(5) of the Interstate Commerce Act, requested Burlington Northern Inc. to furnish to the Commission certain materials relating to budget forecasts. The request dated September 4, 1970, recited that the inquiry related to certain dividend action taken by Burlington Northern Inc. and sought forecast data for the years 1970 and 1971. The request dated September 25, 1970, related to a request for forecast information directed to 73 railroads on July 17, 1970. Burlington Northern Inc. responded to this inquiry on August 4, 1970, but in the September 25 letter, Mr. Paolo sought further details as to forecasts for the year 1970 and for the fourth quarter of 1970. Plaintiffs objected to the production of forecasts, contending, *inter alia,* that the materials did not constitute "accounts, books, records, memoranda, correspondence, and other documents" within the meaning of Section 20(5), and that the Commission

had no lawful authority to demand their production.

7. On or about October 30, 1970, plaintiffs, in support of their objections, submitted to defendant Paolo an opinion of their counsel, Anthony Kane, Vice President—Law, a copy of which is attached to the amended verified complaint as Exhibit A. At that time, plaintiffs furnished to defendant Paolo excerpts from meetings of the Board of Directors of Burlington Northern Inc. on February 25, 1970, June 15, 1970 and August 21, 1970 at which dividend action was taken. The excerpts consisted of the resolutions passed by the Board and the financial statements presented to the Board. Plaintiffs also offered to provide the Commission with monthly financial reports (as distinguished from budget forecasts) providing the same detail as now furnished in quarterly reports filed with the Commission.

8. On November 18, 1970, Thomas A. Stachowicz and Raymond A. Youngbauer, representing themselves as duly-authorized Auditors of the Commission, and bearing credentials in the form prescribed by the Commission (49 C.F.R. § 1000.5(d)), served upon Mr. W. N. Ernzen a "Formal Demand For Examination of Records", a copy of which is attached to the amended verified complaint as Exhibit B, demanding, pursuant to Section 20(5), to inspect and examine the following materials:

(1) Burlington Northern, Inc., 1970 budget forecast including but not limited to items pertaining to cash flow forecast and income forecast, together with associated working papers and interpretative material including but not limited to summarizations of any phase of the forecast.

(2) Burlington Northern, Inc., most current budget forecast including but not limited to items pertaining to cash flow forecast and income forecast, together with associated working papers and interpretative material including

but not limited to summarizations of any phase of the foregoing forecast.

(3) Burlington Northern, Inc., all analyses, working papers, preliminary studies, interpretative material and summarizations presently on hand and in the making as the subject matter for the next budget forecast of the nature indicated in (1) and (2) above.

(4) All documents showing variances between the Burlington Northern, Inc., budget forecasts and actual performance for each month and/or quarter of the calendar year 1970.

9. The "Formal Demand For Examination of Records" stated in part:

"This demand is in the nature of a continuing demand and shall continue for each and every day until such time as the aforesaid records are submitted for examination to the undersigned pursuant to this demand.

"Your attention is specifically directed to Section 20(7) (a) of the Interstate Commerce Act which provides that in case of failure or refusal on the part of carriers or other persons subject to the provisions of this Act to submit for examination the aforesaid documents, the carrier and/or such persons shall forfeit to the United States not to exceed $500.00 for each such offense and for each day during which such failure or refusal continues. This continuing demand shall terminate upon receipt of advice from Burlington Northern, Inc. that it and its Vice President—Finance, W. N. Ernzen will immediately comply with the demand as aforesaid * *."

10. Messrs. Stachowicz and Youngbauer, in serving the "Formal Demand For Examination of Records," were acting at the direction and under the control of defendant Paolo. The "Formal Demand For Examination of Records" recites that it is based upon Section 20(5) of the Act, and it has not been issued pursuant to an order of the Interstate Commerce Commission.

11. On November 25, 1970, Burlington Northern Inc. and W. N. Ernzen filed a verified complaint for a declaratory judgment and for injunctive relief seeking primarily a declaration that the materials demanded in the "Formal Demand For Examination of Records" served November 18, 1970, do not constitute "accounts, books, records, memoranda, correspondence, and other documents" within the meaning of Section 20(5) of the Interstate Commerce Act, and that the failure or refusal of plaintiffs to furnish such materials to the Interstate Commerce Commission or its duly authorized representatives does not constitute a violation of said section or subject plaintiffs to the forfeitures prescribed in Section 20(7) (a) of the Act. On December 8, 1970, the Interstate Commerce Commission filed its answer praying that the Court enter an order dismissing the complaint. On December 10, 1970, the United States of America, acting at the request of the Commission, moved for leave to intervene as a defendant in this proceeding and to assert a counterclaim under Sections 20(5), 20 (7), and 20(9) of the Act, declaring plaintiffs' refusal to comply with the demand to be a violation of Sections 20(5) and 20(7), commanding plaintiffs to comply with the demand, and assessing against plaintiffs a forfeiture of $500 per day from November 18, 1970, until the demand was satisfied. By stipulation of the parties, the motion to intervene was granted on December 11, 1970, and plaintiffs filed a reply to the counterclaim on December 14, 1970. On December 10, 1970, defendants filed a motion for summary judgment. On December 18, 1970, plaintiffs filed a cross motion for summary judgment. On December 22, 1970, by agreement of the parties, the Court entered a Consent Order dismissing both the complaint filed on behalf of W. N. Ernzen and the counterclaim asserted against him.

12. The forecast materials sought by the Formal Demand are not required to

be prepared or retained by Burlington Northern Inc. pursuant to regulations of the Commission or the provisions of the Interstate Commerce Act.

13. The forecast materials sought by the Formal Demand are not records of historical facts or past transactions but pertain to budget forecasts of Burlington Northern Inc., including items relating to cash flow forecasts and income forecasts.

14. The budget forecasts, including income and cash flow forecasts, and associated documentary materials, sought by the Formal Demand are not in the same class as other materials and estimates submitted to the Commission by Burlington Northern, Inc. and other railroads as a part of their regular accounting and reporting procedures.

15. The forecast materials sought by the Formal Demand are not public documents and are not furnished to the public.

16. The affidavits submitted by Burlington Northern, Inc. and executed by accounting officers of Burlington Northern, Inc., the accounting officers of two of its subsidiaries, the Colorado and Southern Railway Company and the Fort Worth and Denver Railway Company, and accounting officers of two non-affiliated railroads, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company and the Southern Railway System, each state that to the affiant's knowledge these railroads (and the predecessors ·of Burlington Northern, Inc.) have not been requested to furnish, and have not furnished, to auditors employed by the Commission budget forecasts, including income and cash flow forecasts of the kind sought in the Formal Demand. The reply affidavit filed on behalf of defendants states, with respect to each of these railroads, that although all aspects of the present request may not have been covered in the past, it is probable that some requests for budget forecasts and cash flow forecasts were made in the normal course of field examinations of the accounting records of these carriers, that such requests would

be made to the people who retain or maintain such records, and would not necessarily be brought to the attention of accounting officers. On the basis of these affidavits, although forecast materials may have been furnished to auditors employed by the Commission in the course of field examinations, if this was done it was not done pursuant to an official request or demand by the Commission and was not done with the authorization or knowledge of the responsible officers of the railroads.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter of this proceeding and of the parties thereto.

2. The issues to be resolved in this proceeding are (1) the extent of the authority of the Interstate Commerce Commission under Section 20(5) of the Interstate Commerce Act (49 U.S.C. § 20 (5)) to secure documentary materials from a carrier subject to its jurisdiction, and (2) the applicability of Section 12 (1) of the Act (49 U.S.C. § 12(1)) to the Formal Demand at issue in this proceeding.

3. There are no genuine issues of material fact with respect to plaintiff's motion for summary judgment.

4. Section 20(5) of the Interstate Commerce Act provides in pertinent part:

*"Forms of accounts, records, and memoranda; access to records, etc., by Commission or agents.*

"(5) The Commission may, in its discretion, prescribe the forms of any and all accounts, records, and memoranda to be kept by carriers and their lessors, including the accounts, records, and memoranda of the movement of traffic, as well as of the receipts and expenditures of moneys, and it shall be unlawful for such carriers or lessors to keep any accounts, records, and memoranda contrary to any rules, regulations, or orders of the Commission with respect thereto. The Commission or any duly authorized

special agent, accountant, or examiner thereof shall at all times have authority to inspect and copy any and all accounts, books, records, memoranda, correspondence, and other documents, of such carriers, lessors, and associations, and such accounts, books, records, memoranda, correspondence, and other documents, of any person controlling, controlled by, or under common control with any such carrier, as the Commission deems relevant to such person's relation to or transactions with such carrier. * * * Such carriers, lessors, and other persons shall submit their accounts, books, records, memoranda, correspondence, and other documents for the inspection and copying authorized by this paragraph, * * * to any duly authorized special agent, accountant, or examiner of the Commission, upon demand and the display of proper credentials."

5. Prior to the Transportation Act of 1920, which amended Section 20(5) to read as it now does, Section 20 of the Interstate Commerce Act provided in part:

"The Commission shall at all times have access to all accounts, records, and memoranda kept by carriers subject to this Act, and it shall be unlawful for such carriers to keep any other accounts, records, or memoranda than those prescribed or approved by the Commission, and it may employ special agents or examiners, who shall have authority under the order of the Commission to inspect and examine any and all accounts, records, and memoranda kept by such carriers. * * * "

In United States v. Louisville & Nashville R. Co., 236 U.S. 318, 35 S.Ct. 363, 59 L. Ed. 598 (1915), the Supreme Court concluded that the authority granted the Commission to inspect "accounts, records or memoranda" related to "accounts, records, and memoranda" kept in the bookkeeping system to be prescribed by the Commission (236 U.S. at 334, 35 S.Ct. 363). The Court specifically held that

Section 20, as it then stood, did not authorize inspection of correspondence, even though certain correspondence may contain a record or be the only record of business transactions (236 U.S. at 334, 336, 35 S.Ct. 363).

6. Subsequent to the decision in the *Louisville & Nashville* case, the Commission recommended to Congress in its annual reports for 1915, 1916, and 1917:

"That that portion of Section 20 of the Act which accords the Commission rights of access to the accounts, records, and memoranda kept by carriers be amended so as to also accord right of access to the carriers' correspondence files."

In the Transportation Act of 1920, Congress amended what is now Section 20(5) by adding to the words "accounts, records, and memoranda," which defined the materials the Commission might inspect, the words "including all documents, papers, and correspondence." As shown by the House Hearings on H.R. 4378, 66 Cong. 1st Sess. (1919), p. 33, which became the 1920 Act, the purpose of this amendment was as follows:

"[Commissioner] Clark. * * * It will give the Commission the same access to the correspondence files of the carriers subject to its inspection as it now has with regard to accounts, records, and memoranda.

"The Chairman. Is that the result of the decision in the Louisville & Nashville case?

"Mr. Clark. Yes. * * * It has developed in many instances that an understanding of transactions which appear on the books of a carrier, the true facts as to an expenditure and the justification for it under law, cannot be found unless the correspondence which passed in connection with it is reviewed."

7. In the *Louisville & Nashville* case, *supra* at p. 333, 35 S.Ct. at p. 368, the Supreme Court, construing Section 20 of the Act, held:

"Of course, this act, like other acts, may be read in the light of the pur-

pose it was intended to subserve and the history of its origin. We find, then, that in this section Congress has authorized the Commission to prescribe the forms of accounts, records, and memoranda, which shall include accounts, records, and memoranda of the movements of traffic, as well as the receipts and expenditures of money to which accounts, records, and memoranda the Commission is given access at all times."

The Supreme Court also held (236 U.S. at 335, 35 S.Ct. at 369) that the "primary object to be accomplished was to establish a uniform system of accounting and bookkeeping, and to have an inspection thereof."

■ 8. To bring the materials sought in the Formal Demand within the scope of amended Section 20(5), they would have to be deemed "other documents" within the meaning of that section, since these forecasts clearly are not "accounts, books, records, memoranda, [or] correspondence." In the light of the Supreme Court's interpretation of Section 20 set forth in the *Louisville & Nashville* case, supra, and the legislative history surrounding the subsequent amendments to the Act, and the general context of the section, the Court concludes that the amendment of Section 20(5) did not expand the inspection powers of the Commission to categories of documents not related to the prescribed or authorized accounting and corporate records of a carrier, and that the term "other documents" means other documents providing background material which would assist an auditor to understand an entry on the records prescribed by the Commission (see 49 C.F.R. Part 1201, General Instructions 1–3). Accordingly, Section 20(5) does not authorize the Interstate Commerce Commission to inspect the budget forecast materials described in the Formal Demand.

■ 9. Section 12(1) of the Interstate Commerce Act, while conferring certain powers upon the Commission to secure information and to conduct investigations, does not make provision for inspection of documentary materials by Commission representatives; the authority for such inspections arises solely under Section 20. United States v. Louisville & Nashville R. Co., 236 U.S. 318, 329–330, 35 S.Ct. 363 (1915). Neither the Formal Demand nor the counterclaim filed by the United States of America purport to rely on Section 12(1).

10. Since the Formal Demand for forecast materials was not within the authority conferred upon the Commission or its authorized representatives under Section 20(5), the counterclaim asserted by the United States of America, based on Sections 20(5), 20(7), and 20(9) fails to state a claim upon which relief can be granted.

11. In view of the foregoing findings of fact and conclusions of law, the Court finds it unnecessary to decide other issues discussed by the parties in their memoranda or in argument.