**SOUTHERN RAILWAY COMPANY, Appellant,**

v.

**INTERSTATE COMMERCE COMMISSION et al.**

**No. 76–1703.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1976.

Decided March 17, 1977.

David E. McGiffert, Washington, D.C., with whom James H. McGlothlin and David A. Levitt, Washington, D.C., were on the brief, for appellant.

Raymond Michael Ripple, Atty., I. C. C., Washington, D.C., for appellee.

Before DANAHER, Senior Circuit Judge, McGOWAN and TAMM, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge DANAHER.

Opinion filed by Circuit Judge McGOW-AN, concurring in part and dissenting in part.

DANAHER, Senior Circuit Judge:

Southern Railway Company, herein, Southern, is a common carrier by railroad subject to regulation under the Act 49 U.S.C. §§ 1, *et seq.*, by the Interstate Commerce Commission, herein ICC or sometimes, the Commission. Section 20(5) of the Act authorizes ICC, *inter alia*, to ". . . prescribe the forms of any and all accounts, records, and memoranda to be kept by carriers . . . including the accounts, records, and memoranda of the movement of traffic, as well as of the receipts and expenditures of moneys . . .". The ICC, purporting to find its authority in that section, on April 8, 1976, informally sought access to materials possessed by Southern at its Philadelphia office. The ICC request having been rejected by Southern, agents of the Commission, that same day, filed a Formal Demand for Examination of Records [1] then calling for the examination and inspection of all of Southern's "solicitation" files in that Philadelphia office.

Possibly intimating doubt as to the specificity concerning wanted materials, Southern on brief [page 5] tells us that ICC "apparently meant what Southern calls 'customer' and 'commodity' files." [2] Again, on brief [page 10] Southern tells us that to say that the ICC's inspection rights are limited is "not to deny the ICC's right to inspect any documents for which it has a legitimate need for regulatory purposes."

Southern has added that

1. The Commission's "Formal Demand" asserted the Commission's reliance upon Section 20(5) of the Interstate Commerce Act, as authorizing its claim of right to inspect and examine the following records:

   All files and records of the order generally referred to as solicitation files which are in the Philadelphia office of the Southern Railway System, including all files of this type which were on the premises between 0900 and 1000 EDT, this date, when a verbal request was made by Investigator Lawrence. (J.A.–16).

   The Commission further directed Southern's attention to Section 20(7)(a) of the Act which provides in the case of failure to submit for examination and inspection the "aforesaid documents" the carrier shall forfeit to the United States not to exceed $500.00 for each offense and for each day the failure or refusal shall continue. (J.A.–16).

2. In support of Southern's prayer for a restraining order, Southern submitted an affidavit by one Meadows, Southern's district sales manager in Philadelphia who had been employed by Southern for some 35 years. Intending, no doubt, to demonstrate to the court that Southern could not have known what the Commission meant by "solicitation" files, Meadows' affidavit undertook identification of "solicitation" files thus:

   6. Solicitation files maintained in this office are filed under the name of the individual Southern Railway patron or potential patron be he either shipper or receiver. The preponderance of the papers in such files consists of correspondence between this office and other Southern Railway Sales offices pertaining to potential movements not now routed via Southern or movements from which Southern could accrue additional revenues if they were from/to Southern at different junctions with other rail carriers. Such solicitation files would contain letters from this office to patrons, both actual and potential, pointing out the advantages of using Southern. Resulting correspondence with the customer would also be in the solicitation file. Other correspondence that might be found in solicitation files would be information rendered as to service performed on an individual car,

if the ICC special agents either orally or by formal demand will indicate which types of documents, required to be kept by the ICC regulations, are desired, Southern will produce all such documents for inspection together with an affidavit that all such documents in the files have been produced.[3]

## I.

Against the background thus compendiously stated, Southern has submitted as the "ISSUE PRESENTED FOR REVIEW",

Whether under Section 20(5) of the Interstate Commerce Act the Interstate Commerce Commission has unlimited access to all documents maintained by a railroad.

The Commission on the other hand has defined the issue thus:

In our view the question presented is whether Southern Railway unlawfully refused to allow inspection by duly authorized agents of the Interstate Commerce Commission of its solicitation files in the railroad's Philadelphia office.

## II.

The respective parties largely have focused their attention upon this Court's opinion in *Burlington Northern, Inc. v. Interstate Commerce Commission*, 149 U.S.App. D.C. 176, 462 F.2d 280 (1972), rehearing *en banc* denied by an equally divided court, (further reference, *infra*).

The district court here had denied Southern's motion for summary judgment and had granted the motion filed by the Commission. There had been no memorandum of decision, there were no findings, indeed, there had been no statement of conclusions of law.[4] We thus find ourselves relegated to consideration of the various affidavits and the memoranda filed by the parties in support of their respective motions.

Southern has insisted that *Burlington Northern* commands reversal here, with ultimately a judgment in Southern's favor. That is not so.[5]

The Commission would not only distinguish *Burlington Northern* but has contended that *Burlington Northern* had been "wrongly decided." And that is not so, either.

The Commission when seeking certiorari following our denial of rehearing en banc in *Burlington Northern* stated for the Supreme Court that the question presented was:

Whether Section 20(5) of the Interstate Commerce Act (49 U.S.C. 20(5)), which

---

letters to Southern's operating officials, suggesting service improvements to secure a specific movement, copies of letters from Southern's rate officers to the customer relative to a pending rate adjustment, congratulatory letters to members of the customers firm and letters relative to equipment needs.

7. None of the solicitation files are required to be kept pursuant to regulations of the Interstate Commerce Commission and to the best of my knowledge none would be relevant or helpful in explaining or elucidating on any records which are required to be kept by the Interstate Commerce Commission. (J.A. 5–6).

3. With the Commission recognizing no degree of concession to Southern's position, and with Southern insisting that the materials sought by the Formal Demand, *supra*, are not "accounts, records and memoranda" required to be kept pursuant to the Commission's regulations, Southern commenced this action. Southern additionally alleged that the materials at issue

do not constitute "accounts, books, records, memoranda, correspondence, and other documents" within the meaning of Section 20(5). Southern further submitted that the Formal Demand was in violation of this court's ruling in *Burlington Northern, Inc. v. I.C.C.*, *infra*, Part II.

4. *Compare* the treatment by District Judge Parker in *Burlington Northern, Inc. v. I.C.C.*, 323 F.Supp. 273 (D.D.C.1971).

When that case reached our court, Southern filed a brief as *amicus* urging affirmance of the judgment of the district court.

5. Southern prayed *inter alia* for a declaration that Southern's failure or refusal to furnish such materials constituted no violation of 49 U.S.C. § 20(5) and for an order restraining the initiation or prosecution of forfeiture proceedings under 49 U.S.C. § 20(7).

empowers Interstate Commerce Commission to inspect "any and all accounts, books, records, memoranda, correspondence, and other documents" of railroads, covers only records relating to the maintenance of a uniform system of accounts and to the explanation or understanding of required accounting entries, and thus does not authorize the Commission to inspect budget forecasts of railroads.

The Court in its No. 72–6 denied the Commission's petition on October 10, 1972, *Interstate Commerce Commission, et al. v. Burlington Northern, Inc.*, 409 U.S. 891, 93 S.Ct. 120, 34 L.Ed.2d 148. Justice Douglas alone recorded his willingness to have granted the writ.

The Commission's effort to secure further review having thus been denied, it now may prove helpful if we turn to the core of this court's opinion in *Burlington Northern, Inc. v. I.C.C.*, *supra*, 149 U.S.App.D.C. at 182, 462 F.2d at 287–288, where we discussed the teaching of the Supreme Court in *United States v. Louisville & Nashville Railroad Company*, 236 U.S. 318, 335–336, 35 S.Ct. 363, 59 L.Ed. 598 (1915). We discerned the purpose of Section 20 to be

. . . to maintain a uniform accounting system and to permit the analysis and interpretation of records which are required to be kept by carriers. The Commission's access to memoranda and other materials in the possession of carriers must therefore be confined to circumstances in which the need for information relating to or explanatory of required accounting and bookkeeping entries is evident. The Commission's powers of inspection are focused upon facts and historical data as reflected in the records; *they do not extend to projections or predictions of future events* which have no apparent relevance to the understanding or evaluation of accounting and bookkeeping entries. (Emphasis added.)[6]

## III.

It would seem clear, by now, that the Commission really has been insisting that it possesses a right derived from Section 20(5) to a complete and plenary search of Southern's records. Had the Commission been proceeding under 49 U.S.C. § 12, we would have had a distinctly different case. The scope of the Commission's authority in order to perform the duties and carry out the objects for which it exists is vast, indeed. But any such search would have been commenced by action of the *Commission* and so would not have stemmed from a decision by some "special agent." We would have construed its authority in light of the teaching of *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), where Mr. Justice Jackson so admirably has spoken for the Court. Even there, it was recognized that some administrative agencies in their zeal may have proffered an investigative demand which is too indefinite and may have sought information not reasonably relevant to the execution of their proper function. The Court noted in *Morton Salt*, 338 U.S. at 653, 70 S.Ct. 357, that neither respondent had raised objection to the sweep of the order under consideration, had sought no modification, clarification or interpretation of it; neither, in short, had contested the terms of the order, and so had afforded the Federal Trade Commission no opportunity to provide reasonable modifications of the Commission's demands or otherwise to have presented a record which might have justified the Commission's position.

Here the record has not shown that the ICC had prescribed the forms of the "solicitation" files it sought. Nor has the record demonstrated to have been "unlawful" the maintenance by Southern of its "customer" or "commodity" files—but it would seem not unreasonable for us to assume that such

---

**6.** The budget and income forecasts "might or might not occur in the future, as distinguished from facts and past events recorded in the books and records of the carriers" our *Burlington Northern* opinion noted, 149 U.S.App.D.C. at 184, 462 F.2d at 288. It may seem not exactly trite to observe that prophets of gloom, likely enough, may be in error at least as often as harbingers of joy.

files were at least among those which the Commission sought to inspect.[7]

Even so, in light of what we do know from the record, it is not enough to say that Southern must prevail because the Commission has been obdurate in its insistence upon plenary access to Southern's files without having specified its investigative purpose or without making its demand reasonably definite.[8] Conversely, it is not for us to say that the Commission is entitled to a judgment on the theory that Section 20(5) must be read to mean what the Commission would like us to say the language means. True enough, "The Commission may, in its discretion, prescribe the forms of any and all accounts . . ." but we are not shown that it has done so with respect to "solicitation" files.

We will not say that the Commission has not acted in good faith in its zeal here to carry out the function entrusted to it by the Congress, the authorization for which, even in the respects here at issue, clearly has been encompassed within the powers conferred by 49 U.S.C. § 12. *Cf. Burlington Northern, Inc. v. I.C.C., supra.* It well may be that when Congress unambiguously provided a recognized means by which the Commission might achieve its objective, *see*

United States v. Morton Salt Co., supra, it sought otherwise to avoid complications which might result in unconstitutional conduct.[9] Surely we know well that an agency may not "bootstrap" its position by mere reiteration of its claim of authority. *Compare FMC v. Seatrain Lines, Inc.,* 411 U.S. 726, 746, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973).

### IV.

Our record discloses that when the respective motions for summary judgment came on for hearing the district judge and counsel for Southern engaged in colloquy relating to what might be the composition of solicitation files or records. The discussion seems not to have taken account of our holding in *Burlington Northern, supra,* wherein we ruled concerning the "circumstances" under which the Commission had been authorized to "prescribe" the forms of such detailed materials as are "required" to be kept by carriers. Rather, the district judge apparently was thinking in terms of search and seizure when evaluating the claims of the parties. The judge mentioned particularly *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).[10] His ruling seems to have been

---

7. The record contains an affidavit by the Commission's William J. Love, Chief, Section of Railroads, Bureau of Operations, which reads
    Solicitation files are generally identified by company or commodity and contain documents that reflect efforts to obtain, retain, or expand freight traffic for the railroad. Typically, such files contain records of past or potential future transactions between the railroad or a customer. Generally, copies of correspondence between the railroad and customer are maintained in the railroad's solicitation files. Internal correspondence between various offices of the railroad are also contained in the solicitation files. Such correspondence may relate directly to the rate charged for the transportation of a particular commodity. Any matter which may bear on the business relationship between the railroad and a customer may be contained in a solicitation file. (J.A.–136).

8. *See Burlington Northern, Inc. v. I.C.C.,* 149 U.S.App.D.C. at 184, 462 F.2d at 288. Even where within the ambit of our holding in that case it might be said that Commission access

to Southern's files could be appropriate, Judge Leventhal pointedly observed that he would not "say that the authority may be exercised routinely.". *Id.,* 149 U.S.App.D.C. at 184, 462 F.2d at 288.
    Broadly reflecting our own consideration of the problem here as in *Burlington Northern, supra,* see *Civil Aeronautics Board v. United Airlines, Inc.,* 542 F.2d 394 (C.A. 7 1976).

9. *See generally, Camara v. Municipal Court,* 387 U.S. 523, 534, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

10. Quite apart from the all but unique problem considered in such clearly distinguishable cases as *United States v. Biswell, supra; Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *compare See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the fact remains that here no "warrantless" intrusion had occurred. There had been no search or seizure. The Court itself has recognized that some businesses because of their special nature may be open to intrusions which would not be permissible in

predicated upon his appraisal of the significance of *United States v. Biswell,* and therein he erred.

We might, of course, simply reverse on the ground that the Commission had failed to justify its "all or nothing" position respecting its claim to unlimited access to Southern's files.[11] We believe it preferable, however, to reverse and remand that the Commission may exercise the discretion conferred upon it by 49 U.S.C. § 20(5). The Commission thus may be afforded an opportunity to demonstrate the need for information relating to or explanatory of required accounting and bookkeeping entries and otherwise conformably to our holding in *Burlington Northern, supra.* Of course, the parties, already so close to an understanding of what evidence is essential to a compliance survey, are free to substitute agreement and reasonable accommodation in place of persistent obduracy.

With such further proceedings to be had on remand, we will now reverse the district court's order which had denied Southern's prayer for an order restraining the initiation or prosecution of forfeiture proceedings under 49 U.S.C. § 20(7).

Let our order reversing and remanding be drawn accordingly.

McGOWAN, Circuit Judge, concurring in part and dissenting in part:

Although I share my colleagues' conviction that the District Court must be reversed in this case, I do not believe a remand for further proceedings is either necessary or appropriate; and accordingly, I would simply reverse the District Court.

Section 20(5) of the Interstate Commerce Act provides, in pertinent part:

The Commission or any duly authorized special agent . . . thereof shall *at all times* have authority to inspect and copy *any and all* accounts, books, records, memoranda, correspondence, and other documents, of such carriers . . . .
(Emphasis added.)

On the basis of this broad language, the Commission has asserted an unlimited right to inspect, without specifying what material it wishes to see or why, any file on the premises of a railroad. In particular, special agents of the Commission have sought to examine all the "solicitation" files in the Philadelphia office of appellant Southern Railway.

The seemingly unrestricted grant of inspection authority in § 20(5) has been qualified by judicial construction on several occasions. The most important of these occurred over sixty years ago in *United States v. Louisville & Nashville R.R.,* 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915). In that case, the Supreme Court held, as a matter of statutory interpretation, that the then-current version of § 20(5) did not permit the Commission to examine "correspondence received or sent by the railroad companies."[1] 236 U.S. at 335, 35 S.Ct. at 369. The Court's opinion reveals that, although the result was not justified on constitution-

---

a purely private context. *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

We may note again Judge Leventhal's observation in *Burlington Northern,* 149 U.S.App. D.C. at 184, 462 F.2d at 288:

We do not say that the [claimed] authority may be exercised routinely. The items involved are internal papers that stand at the heart of the management effort, and so long as our carrier operations are rooted in private enterprise there is a strong element of privacy in such items.

11. *Cf. Civil Aeronautics Board v. United Airlines, Inc.,* 542 F.2d 394 at 403 (C.A. 7 1976); where the court said

In the case at bar the Board, having taken the position that it need not specify its investigative purpose or make its demand reasonably definite, and having demanded only the issuance of an order which would amount to a general warrant, made it impossible for the District Court to grant the less expansive relief to which the Board would have been entitled. That court's order denying relief is therefore affirmed.

Note that the statute therein considered, 49 U.S.C. § 1377(d), provided that the Board *shall* prescribe the forms of any and all accounts, et cetera.

1. In the Transportation Act of 1920, ch. 91, § 435, 41 Stat. 456, Congress reversed the nar-

al grounds, both parties expended considerable energy in discussing possible Fourth Amendment constraints on administrative inspection of corporate documents. The Court's desire to avoid a potentially thorny constitutional issue may thus explain the *Louisville & Nashville* dictum on the basic purpose underlying § 20(5). "The primary object to be accomplished was to establish a uniform system of accounting and bookkeeping, and to have an inspection thereof." [2] *Id.*

The Fourth Amendment foundation for this remark, if such there was, has clearly been eroded by subsequent Supreme Court decisions. *See, e. g., United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950) (to avoid Fourth Amendment problems, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant"). Nevertheless, the *Louisville & Nashville* Court's limited assessment of the purpose behind § 20(5) has enjoyed continued currency, most notably in the recent decision of this court in *Burlington Northern, Inc. v. I.C.C.,* 149 U.S.App.D.C. 176, 462 F.2d 280, *cert. denied,* 409 U.S. 891, 93 S.Ct. 120, 34 L.Ed.2d 148 (1972). *See* text of majority opinion accompanying note 6.

Joined by three members of the court, Judge Leventhal outlined the reasons why he would have granted rehearing *en banc* in *Burlington Northern.* In doing so, he indicated that the Commission's power under § 20(5) is probably a good deal broader than was suggested in *Louisville & Nashville.* However, Judge Leventhal cautioned that in no event should the statutory authority be "exercised routinely." 462 F.2d at 288. In a similar vein, the Seventh Circuit, construing the Civil Aeronautics Board's inspection authority under a statute nearly identical to § 20(5), held that the Board is entitled to examine any records "reasonably relevant to an investigation the Board is empowered to make". *CAB v. United Airlines, Inc.,* 542 F.2d 394, 402 (7th Cir. 1976).

In order to resolve the issue now before us, we need not decide whether the *Louisville & Nashville* appraisal of the purpose of § 20(5) was ill-conceived when originally announced, whether the *Burlington Northern* panel's adherence to that view was justifiable in light of intervening developments prior to 1972, or whether, even conceding the accuracy of the Supreme Court's dictum in *Louisville & Nashville,* the *Burlington Northern* application of the *Louisville & Nashville* precedent was correct on the facts of the later case. The Commission's claim of an unconditional right to inspect all railroad files could not be sustained even if we as a panel felt free to abandon the "accounting and bookkeeping" limitation on § 20(5) in favor of an approach based on *United Airlines,* requiring only that an inspection demand be "reasonably relevant to a proper investigative purpose". 542 F.2d at 402.

Here, the Commission refused to disclose its investigative purpose (if indeed it had one) at the time it sought to examine Southern Railway's "solicitation" files.[3] Throughout this litigation, the Commission has maintained that such disclosure is not a prerequisite to a legitimate inspection demand under § 20(5). The District Court approved the Commission's position. I do not; nor, as I understand it, does the majority. Under the circumstances, I see no reason for a remand. If the Commission hereafter wishes to make a new—and more informatory—request to inspect documents in Southern's files, it is free to do so.

---

row holding of *Louisville & Nashville* by amending § 20(5) to make plain that correspondence *was* included among the materials which the Commission was authorized to inspect.

**2.** In arriving at this conclusion, the Court relied heavily, not on any expression of legislative intent, but rather on an Interstate Commerce Commission report to Congress, urging the

adoption of a statute which would allow the Commission "to prescribe a form in which books of account shall be kept by railways". *See* 236 U.S. at 332, 35 S.Ct. at 367.

**3.** *A fortiori,* the Commission refused to specify what materials it wished to see, and in what manner those materials were relevant to the Commission's investigative purpose.