CIVIL AERONAUTICS BOARD,
Plaintiff-Appellant,

v.

FRONTIER AIRLINES, INC.,
Defendant-Appellee.

No. 79-1584.

United States Court of Appeals,
Tenth Circuit.

Aug. 23, 1982.

[redacted]

Reuben B. Robertson, Director, Bureau of Consumer Protection, Charles L. Reischel and Paul W. Wallig, Attys., C. A. B., Washington, D. C., Joseph Dolan, Former U. S. Atty., C. Scott Crabtree, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellant. (Ivar V. Mellups, Deputy Gen. Counsel, William H. Wentz, Associate Gen. Counsel, Paul W. Wallig, Deputy Associate Gen. Counsel, Washington, D. C., and Robert N. Miller, U. S. Atty., and Donald Hoerl, Asst. U. S. Atty., Denver, Colo., filed a supplemental brief for appellant.)

James E. Hautzinger and William L. Hunnicutt, Sherman & Howard, Denver, Colo., for defendant-appellee.

James E. Landry and David R. Murchison, Washington, D. C., for the Air Transport Ass'n of America, amicus curiae.

Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

PRELIMINARY STATEMENT

The issue in this case arises from an effort on the part of the Civil Aeronautics Board acting in its regulatory capacity to examine books, records and corporate minutes of Frontier Airlines. The question pertains to the scope and depth of the authority of the Civil Aeronautics Board to examine any and all records of a carrier. But particularly, it reduces to whether Frontier can be required to bring forward all of the minutes of meetings of its Board of Directors and Executive and Audit committees for the period from March 31, 1977 through March 31, 1978. When the case was submitted to the trial court on cross motions for summary judgment, the court based its opinion and order on an agreed statement of undisputed facts which was submitted by the parties.

A panel of this court reversed the dismissal of the action by the trial court, 468 F.Supp. 443, and a rehearing en banc was granted at the request of Frontier. The judgment of the panel was vacated April 17, 1981. The case was submitted without further oral argument to the en banc panel on May 6, 1982.

The statute which is here involved is the Federal Aviation Act of 1958, 49 U.S.C. § 1301, *et seq.*, which gives the Civil Aeronautics Board the power to regulate in the economic area and to inspect the books and records of the air carriers. In execution of that authority § 407(d) of the Act, 49 U.S.C. § 1377(d) is applicable and provides:

> The Board shall prescribe the forms of any and all accounts, records and memoranda to be kept by air carriers, including the accounts, records and memoranda of the movement of traffic, as well as of the receipts and expenditures of money, and the length of time such accounts, records and memoranda shall be preserved; and it shall be unlawful for air carriers to keep any accounts, records or memoranda other than those prescribed or approved by the Board: *Provided,* That any air carrier may keep additional accounts, records or memoranda if they do not impair the integrity of the accounts, records or memoranda prescribed or approved by the Board and do not constitute an undue financial burden on such air carrier.

[redacted] Section 407(e) of the Act, 49 U.S.C. § 1377(e), authorizes the inspection of the materials by the Board and this is the stat-

ute which is at issue in this case. It provides:

> The Board shall at all times have access to all lands, buildings and equipment of any air carrier or foreign air carrier and to all accounts, records and memorandums, including all documents, papers and correspondence, now or hereafter existing, and kept or required to be kept by air carriers, foreign air carriers, or ticket agents and it may employ special agents or auditors, who shall have authority under the orders of the Board to inspect and examine any and all such lands, buildings, equipment, accounts, records and memorandums. The provisions of this section shall apply, to the extent found by the Board to be reasonably necessary for the administration of this chapter, to persons having control over any air carrier, or affiliated with any air carrier within the meaning of section 5(8) of this title.

The above statutes are, to say the least, broad and generous in their grant of power to the Board. They say that the Board shall have access to *all* documents, papers and correspondence. It goes on to say that the provisions of the section shall apply to the extent found by the Board to be reasonably necessary for the administration of the chapter and to persons having control over any air carrier or affiliated with any air carrier within the meaning of § 5(8) of this title. As will be seen, the case law has not supported the Board's view that its right to see any and all records on demand is absolute. For example, a rule of reason has found its way into the discovery process.

### STATEMENT OF FACTS

This dispute commenced when an auditor of the CAB began a routine examination of Frontier's books of account on June 14, 1978. He requested access to all minutes of Frontier's Board of Directors' meetings plus minutes of its Executive and Audit Committees, all from March 31, 1977 through March 31, 1978. The auditor failed, so it is contended by Frontier, to give a satisfactory explanation as to the relevancy of the material demanded to the audit. The result was Frontier's refusal to turn over the requested material. Shortly thereafter Frontier, through its Vice President-Legal and Corporate Secretary reaffirmed to an attorney of the CAB that Frontier was not going to produce the material until the CAB limited its request to one that was reasonably definite and reasonably relevant to a proper investigative purpose, thereby, so it is argued, meeting the requirements set out in *Civil Aeronautics Board v. United Airlines, Inc.*, 542 F.2d 394 (7th Cir. 1976).

It was after this that the attorney for the CAB stated that the purpose of the audit was to determine the accuracy of Frontier's books of account for the period starting October 1976 and continuing to March 31, 1978. Frontier believed that there were parts of the requested minutes which were not relevant to the purpose. It continued to refuse the request for unlimited access to the minutes. Frontier filed an action in the United States District Court for the District of Colorado in which it sought declaratory and injunctive relief from the CAB's demand. That action was dismissed by Frontier when an enforcement action was brought by the CAB in the United States District Court for the District of Columbia which action was subsequently transferred to the District of Colorado.

Frontier has offered to produce all minutes of its Audit Committee during the time in question, plus all portions of the other requested minutes which addressed or were related to any entries in its books of account or other information reported to the CAB, and all portions of other requested minutes setting forth any action taken by the Board of Directors and Executive Committee on any transactions coming before them during the relevant period, including all resolutions approved by the Board of Directors and Executive Committee.

All of these offers on the part of Frontier have been rejected by the CAB. Its position is that it wishes an opportunity to inspect *all* of the minutes, excluding only those matters protected by the attorney-client privilege.

CAB has stipulated that there exists a probability that matters might have been discussed in the requested minutes which are not reasonably related to a proper investigative purpose of the CAB. Frontier has stipulated also that there are probably matters discussed in the minutes that are reasonably related to a proper investigative purpose of the CAB.

Pursuant to the Act, the CAB has promulgated certain regulations, including 14 C.F.R. § 241 1–5(a) which declares:

"The general books of account and all books, records and memoranda which support in any way the entries therein shall be kept in such manner as to provide at any time full information relating to any account. . . ." 14 C.F.R. § 241 1–5(b) provides: "The books and records referred to herein include not only accounting records in a limited technical sense, but all other records such as organizational tables and charts, internal accounting manuals and revisions thereto, minute books, stock books, reports, cost distributions and other accounting work sheets, correspondence, memoranda, etc., which may constitute necessary links in developing the history of, or facts regarding, any accounting or financial transaction." 14 C.F.R. 249.13(f), Schedule of Records Items 3(a) and (b), specifically provides that minutes of meetings of stockholders and directors, and minutes of meetings of executive and other directors' committees are to be preserved by the carriers for a specified period of time. It is these regulations that are at issue in this case.

### THE RELEVANT CASE LAW

An analogous problem arose under § 20(5) of the Interstate Commerce Act, as amended, 49 U.S.C. § 20(5). This section served as a model for the provisions of the Federal Aviation Act which are presently at issue. This arose in connection with the Supreme Court decision in the case of *United States v. Louisville & Nashville R. R.*, 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915), in which it was held that the Interstate Commerce Commission did not have the authority to inspect the correspondence of the railroad even though it had authority to inspect accounts, records and memoranda. The reason given by the Supreme Court for this conclusion was that any such inspection would not be related to the purpose of § 20 which was to establish a "uniform system of accounting and bookkeeping and to have inspection thereof." *Id.* at 335, 35 S.Ct. at 369. The Court considered the purpose of § 20 and concluded that inspection of correspondence by the I. C. C. had never been intended by Congress. Congress amended § 20 in 1920, Ch. 91, 41 Stat. 456, 493, so as to include correspondence. The court however placed no restrictions on the right of the Commission to inspect all accounts, records and memoranda kept by the carrier. Since that time the courts have found that the same limitation applied by the court to correspondence, must be applied to inspection of other documents, i.e. the inspection of the documents must be related to the purpose of the statute authorizing the inspection. *Burlington Northern, Inc. v. Interstate Commerce Commission*, 462 F.2d 280 (D.C.Cir.), *cert. denied*, 409 U.S. 891, 93 S.Ct. 120, 34 L.Ed.2d 148 (1972). In *Burlington* the Court ruled that the I. C. C.'s authority under § 20(5) to inspect accounts, records and memoranda kept by carriers did not extend to projections or predictions of future events which had no obvious relevance to the narrow purpose of the statute, i.e. evaluation of accounting and bookkeeping records. Also in *Southern Railway Co. v. Interstate Commerce Commission*, 553 F.2d 1345 (D.C.Cir.1977) the I. C. C. was required to demonstrate its need for information relating to or explanatory of required bookkeeping and accounting entries before the court would require the railroad to produce the requested material for inspection.

We cite the above cases to show that the Court gave a hard look at § 20(5) and did not view it in any expansive way as far as access by the I. C. C. to carrier records was concerned. Thus § 20(5) did not constitute an authorization for an unlimited power of inspection but rather inspection governed by a reasonable relationship to the purpose of the statute.

## THE CORPORATE MINUTES

■ We come now to an evaluation of the claims of the parties with respect to the ultimate bone of contention, corporate minutes. Unquestionably the statutes and regulations authorize the CAB to examine minutes. Corporate minutes are most basic corporate documents which detail policy decisions and major business transactions. If the CAB is to be an effective regulator, it must be allowed access to minutes, at least to the extent that they are shown to be relevant to the Board's mission. Congress anticipated that this power was within the scope of § 407(e). Frontier does not seriously contend that all corporate minutes are not available. It maintains however that there need not be a plenary inspection; that such was not intended by Congress and is outside of the authority legitimately given to the CAB by statute.

The crux of the case is whether the CAB has authority to examine all corporate minutes even to the point of search for some possible irregularity which they are not aware of prior to the inspection.

Perhaps the most significant authority is that of the Seventh Circuit in *Civil Aeronautics Board v. United Airlines, Inc.*, 542 F.2d 394 (7th Cir. 1976). In *United, supra,* agents of the CAB sought immediate and unconditional access to United's land, buildings, accounts and records at United's executive offices in Elk Grove, Illinois. The agents on this occasion had refused to disclose the subject of their investigation and United refused to honor the request. The CAB then brought an action to enjoin United's refusal to allow its agents "immediate and unconditional access to all lands, buildings and equipment of United, and accounts, memoranda, correspondence, records, reports and documents kept" by the carrier. The parties were in a stalemate so the district court granted United's motion for summary judgment, a judgment which was affirmed by the Court of Appeals for the Seventh Circuit. That court found the CAB's power to be broad, but not unlimited; that 49 U.S.C. § 1377(e) fell short of conferring authority amounting to a general warrant of inspection on the CAB; that in the absence of a showing that the request was relevant to the proper exercise of the Board's function of economic regulation of air carriers it should be denied. *Id.* at 399, 400. The court also emphasized the necessity for the Board to disclose its purpose so that a reviewing court may determine the relevance of the requested inspection. *Id.* at 402. Also, the court refused to limit the scope of the Board's inspection to records required to be kept; it found that any records reasonably relevant to a proper investigation could be considered.

The Board argues that *United* has significant factual differences which make it inapplicable. The documents at issue in *United* were not required to be kept. Here, the Board contends, the minutes were required to be kept by the statute [and the regulation]. The majority of the panel in the present case considered this distinction persuasive. One judge found it unimportant in relation to the more important question as to whether or not the information sought was relevant to a proper investigative purpose.

The Seventh Circuit in *United* did not refer to the clause in 49 U.S.C. § 1377(e) which deals with the standard of reasonable necessity in the administration of the chapter. That clause, however, is significant in that any inspection pursuant to § 1377(e) is limited by a reasonableness requirement. Thus the inspection is not unlimited, unqualified, and unrestrained. The Seventh Circuit in effect said that although the CAB's power was broad, it was not unlimited and that 49 U.S.C. § 1377(e) does not confer authority to conduct a general warrant of inspection on the CAB in the absence of a showing that such authority is essential in the exercise of the Board's function of economic regulation. *Id.* at 399, 400. The Board may, the court held, inspect any carrier records reasonably relevant to an investigation of any subject matter properly within its jurisdiction.

The introduction of the rule of reason is certainly a proper limitation and one with which the courts have some knowledge and

understanding. The facts in the two cases may be somewhat different. This does not mean however that there are no lessons to be learned from *United*. In *United* the documents in issue were not required to be kept. Here the documents and minutes were required to be kept by regulation, at least. So the argument of the Board here has slightly more validity. The important question remains as to whether the information sought was relevant in relationship to the investigative purpose involved.

There is other support for the rule of reason standard in analogous situations. *See Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), a Fair Labor Standards Act case. Here again a reasonable standard for inspection of corporate records was adopted and applied. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950); *California Bankers Association v. Shultz*, 416 U.S. 21, 66–67, 94 S.Ct. 1494, 1519–1520, 39 L.Ed.2d 812 (1974). In the case of *Fleming v. Montgomery Ward & Co.*, 114 F.2d 384 (7th Cir.), *cert. denied*, 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446 (1940) the court ruled that there should be full access to the records of the company, and that the inspections of records of wages and hours under the Fair Labor Standards Acts should not be limited only to cases in which the Administrator had reasonable cause to believe that an employer was violating the Act. Also found by the Court was that an administrative agency was entitled to inspect records which it requires an agency to keep, to obtain information and for the further purpose of determining whether or not such records are being kept, and kept in such a way as to make available the specified information. This same court recognized that for a search of records to be consistent with fourth amendment principles there must be a demand made by a duly constituted authority. It also held that such demand must be expressed in lawful process, and that the lawful process must limit the demand to described documents and papers which are easily distinguished and clearly described.

*Fleming* also found that the order for production in that case was specific and that it requested particular records and that the information was relevant to the investigation and the respondent's employment practices. The demand was "expressed in lawful process, confining its requirements to certain described documents and papers easily distinguished and clearly described." *Id.* at 391.

We are not suggesting that the standard set forth in *Fleming* is fully applicable to the instant situation inasmuch as the objects, purposes and duties of the CAB are different from the requirements of the Fair Labor Standards Act. At the same time the CAB should not refuse to make its demands specific and should not refuse to disclose a purpose other than the statutory enforcement authority apparent on the face of the statute. Particularly is this true when it is seeking specific documents which are not ordinarily part of the books of account.

Frontier, in the case at bar, it has to be noted, offered to produce all of the evidence it considered relevant, or in the alternative to produce all documents relevant to any specific area of investigation which could be detailed by the CAB. For example, when it was presented with a hypothetical request from the CAB attorney for all minutes relevant to acquisition of aircraft, Frontier agreed to honor such request. The CAB, however, continued its demand for unlimited access to all of Frontier's minutes, except perhaps those protected by the attorney-client privilege.

There is some argument to be made in support of the CAB's request. For example, they are dealing with a carrier and they have the authority of the Federal Aviation Act § 407(e) behind their efforts. They proceed on the assumption that these minutes will be relevant to CAB purposes or there would be no necessity for requiring their retention. So in essence it cannot be said that the CAB is not entitled to the

minutes necessary to the performance of its obligations under the law. However, in order for the CAB to properly enforce its regulatory authority without complete inspection of corporate documents, including minutes, it should formulate an investigative objective in enough detail so that the airline can know what kinds of records are needed. And there is no apparent reason why the Board could not issue an order or a program setting forth their purpose in seeking particular kinds of minutes.

As to the CAB, if the required records are being kept by Frontier in the proper manner, this could be determined by inspecting a representative variety of materials already proffered by the airline. If inspection of these suggests a necessity for having others, that would be a different matter. These, one would think, ought to be supplied upon request. What we are saying is that reasonableness calls for a certain amount of planning and presentation so that the Board can fulfill its needs and the company's rights are not infringed.

## IN SUMMARY

There are corresponding rights and duties applicable to both the CAB and Frontier. The CAB contends that it has disclosed its purpose sufficiently when the object was revealed as being verification of the adequacy of the books of account. Frontier has made or offered to make some concessions. However, this has been insufficient. Both parties continue to be at odds and unless there are further proceedings, this feuding is likely to continue indefinitely. It is with that in mind that we make the following suggestions.

■ This type of matter is, of course, outside the ordinary province of the court. In fact, the court is ill equipped to monitor this kind of issue on a regular basis. At present, however, there is a need to break the deadlock and perhaps court intervention can help. It is with this in mind that we have recognized the necessity for the Board to give the carrier an outline at least of its investigative effort which outline defines the material which it seeks. At the same time the CAB must understand that there may be some internal policies which the company believes should be protected even from Board scrutiny. When that happens, as it apparently did here, it would seem to us that the court could order the records in dispute to be presented to it for in camera examination. The question would be whether the relevance of the documents to the CAB outweighs the reservations which the company has.

It is our belief that in this particular instance, even though we are not prescribing this as a regular treatment, the trial court should order the airline to produce all the minutes which are in demand for in camera inspection by the court. The judge can examine the minutes in conjunction with the objections of Frontier. If the court determines that the material lacks relevance to any object or purpose of the CAB, then it should deny their delivery.

If the ruling is that the minutes have relevancy to the objects of the Board, it should deliver the minutes to the Board.

The cause is remanded to the district court for further proceedings in accordance with the foregoing.

SETH, HOLLOWAY, BARRETT and SEYMOUR, Circuit Judges, concur in the majority opinion.

McKAY, Circuit Judge, dissenting:

Normally, when reasonable men can differ in interpreting the sweep of governmental intrusiveness, I am inclined, because of my sense of our law and tradition, to move toward an interpretation that limits rather than expands the sweep of governmental prying. As the opinions in this case illustrate, the proper interpretation of the scope of the Civil Aeronautics Board's authority to examine any and all records required to be kept by a carrier is by no means obvious. The only issues raised in this case concern the CAB's statutory and regulatory authority; no constitutional issue has been raised. What ultimately persuades me to join in Judge Logan's dissent is a reexamination of the Supreme Court's decision in *Wyman v.*

*James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). In that case, the Court found no infringement of constitutional rights in an agency's requirement that a beneficiary of the Aid to Families with Dependent Children program submit to home visits by inspectors as a condition to receiving further benefits. If we authorize severe penalties against persons receiving direct welfare assistance unless they surrender important constitutional rights to accommodate the inspection desires of the administering agency, it makes no sense to restrict inspection rights of an agency in the case of corporate beneficiaries of regulatory schemes. After all, the airline carriers are in a much better position to pressure for legislative and regulatory limitations on government intrusiveness in the name of regulation than are the poor recipients of government largess.

LOGAN, Circuit Judge, with whom McWILLIAMS and McKAY, Circuit Judges, join, dissenting in part:

While I agree that this case should be remanded to the district court for further proceedings, I do not agree that the CAB must show specific relevance to an investigatory purpose within its jurisdiction before being allowed to inspect all minutes of Frontier Airlines' directors meetings.

As a regulated air carrier, Frontier is subject to CAB control over fares charged and accounting standards relating to government subsidies it receives. Section 407(d) of the Federal Aviation Act of 1958, 49 U.S.C. § 1377(d), empowers the CAB to "prescribe the forms of any and all accounts, records, and memoranda to be kept by air carriers ... and the length of time such accounts, records, and memoranda shall be preserved...." Section 407(e), 49 U.S.C. § 1377(e), provides that the CAB "shall at all times have access ... to all accounts, records, and memorandums ... required to be kept by air carriers ... and it may employ special agents or auditors, who shall have authority ... to inspect and examine any and all such ... accounts, records, and memorandums."

Exercising its authority under section 407(d), the CAB has issued regulations requiring carriers to preserve permanently the minutes of meetings of directors and of the executive and other directors committees. *See* 14 C.F.R. § 249.13. In this respect the CAB's authority is substantially similar to that of the Interstate Commerce Commission (ICC) under 49 U.S.C. § 20(5) (repealed 1978). Reviewing that provision, the Supreme Court noted in *United States v. Louisville & Nashville R. R.,* 236 U.S. 318, 334, 35 S.Ct. 363, 368, 59 L.Ed. 598 (1915), that "[t]he 'records' of a corporation [include] ... its charter and by-laws, the *minutes of its meetings ...*" (emphasis added). The CAB regulation requiring airlines to maintain and preserve corporate minutes, 14 C.F.R. § 249.13(f), is well within the scope of authority granted by section 407(d).

I do not believe that under section 407(d) the CAB can require air carriers under its jurisdiction to maintain any type records it desires, to which the CAB could then obtain unlimited access by virtue of section 407(e). Surely the general intent behind those sections is to permit the CAB only to require the maintenance of records that are reasonably likely to produce material relevant to its regulatory and investigative authority. No one can deny, however, that minutes of a corporation's directors meetings and executive committee meetings would contain material relevant to the CAB's regulatory obligations. The CAB is responsible for determining the rates the airline can charge for its air passenger services, and for supervising the payment of government subsidies during the periods covered by the minutes. Along with the charter and bylaws, directors minutes are the most basic corporate records, and all major actions taken by the board would be recorded there. The parties have stipulated that Frontier's directors minutes contain relevant material the CAB is authorized to examine.

The key question here is whether there is an implicit limitation upon the CAB's power to examine minutes it may require a carrier to maintain and preserve. Certainly section 407(e) contains no express limitation.

Congress modeled the authority granted the CAB in section 407(e) on the Interstate Commerce Act, 49 U.S.C. § 20(6) (repealed 1978), intending to provide the CAB powers over the aviation industry similar to those of the ICC over the railroads. *United States v. Louisville & Nashville R. R.*, 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed.2d 598, involved the ICC's power to inspect railroad records and correspondence. While the Court held the ICC could not examine the correspondence, the Court indicated *no* limitation on the ICC's power to examine records the ICC could require the railroad to maintain, including corporate minutes. The Court reviewed the legislative history of section 20(6), quoting the following segments of the Commission's report to Congress recommending passage of the act:

"An efficient means of discovering illegal practices would be found, as we believe, in authority to prescribe a form in which books of account shall be kept by railways, *with the right on the part of the Commission to examine such books at any and all times* through expert accountants.... Probably no one thing would go further than this toward the detection and punishment of rebates and kindred wrongdoing."

236 U.S. at 332, 35 S.Ct. at 367 (emphasis added). Reading section 20(6) "in the light of the purpose it was intended to subserve and the history of its origin," the Court found that "Congress has authorized the Commission to prescribe the forms of accounts, records, and memoranda, which shall include accounts, records, and memoranda of the movements of traffic, as well as the receipts and expenditures of money, *to which* accounts, *records*, and memoranda *the Commission is given access at all times.*" *Id.* at 333, 35 S.Ct. at 368 (emphasis added). It held the "primary object to be accomplished was to establish a uniform system of accounting and bookkeeping, *and to have an inspection thereof.*" *Id.* at 335, 35 S.Ct. at 369 (emphasis added). Subsequent amendments to section 20 did not alter its basic function and purpose as defined by the Supreme Court: "to maintain a uniform accounting system and to permit the analysis and interpretation of records which are required to be kept by carriers." *Burlington Northern, Inc. v. I. C. C.*, 462 F.2d 280, 287 (D.C.Cir.), *cert. denied*, 409 U.S. 891, 93 S.Ct. 120, 34 L.Ed.2d 148 (1972).

I agree with the views stated in *Fleming v. Montgomery Ward & Co.*, 114 F.2d 384, 391 (7th Cir.), *cert. denied*, 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446 (1940), that an administrative agency is entitled to inspect records which it reasonably requires to be kept, not only to obtain the information it needs for its regulatory function, but "for the further purpose of determining whether or not such records are being kept, and whether or not they are being kept in such a way as to make available the specified information." I have searched in vain for cases in which courts have imposed limitations on the broad authority granted the CAB and other agencies to inspect the business records they properly require to be kept. *CAB v. United Airlines, Inc.*, 542 F.2d 394 (7th Cir. 1976), relied on by Frontier, is not such a case. There the CAB sought to inspect records it did *not* require air carriers to keep, and the Seventh Circuit held the CAB must first show its purpose and the relevancy of those specific materials.

The majority's order of remand for an *in camera* inspection illustrates precisely why we should permit the routine inspection of the corporate minutes. Unless it is willing to rely upon the regulated corporation's assurances that all relevant materials have been produced, the CAB will have to seek and obtain a judge's *in camera* inspection in every case. This places upon the courts a tremendous and unnecessary burden, since the CAB has properly exercised its authority to require the minutes to be kept and the minutes will always contain information relevant to the Board's proper regulatory and investigative authority.

I would reverse and remand with instructions that the district court permit the CAB auditors to inspect all of the corporate minutes.