UNITED STATES of America,
Plaintiff-Appellee,

v.

SECURITY STATE BANK AND TRUST,
Defendant-Appellant,

Dr. William R. Newton et al.,
Intervenors-Appellants.

No. 72–2337.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1973.

Pat Dooley, Richard Hoerster, Fredericksburg, Tex., for defendant-appellant.

Barry K. Bishop, Donald Scott Thomas, Jr., Austin, Tex., for intervenors-appellants.

William S. Sessions, U. S. Atty., C. J. Calnan, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

BELL, Circuit Judge:

Section 6(b) of the Commodity Exchange Act [1] gives the Secretary of Agriculture power to subpoena witnesses and documentary evidence "for the purpose of any investigation or proceeding" under the Act.[2] The statute provides that "in case of disobedience to a subpoena" the Secretary may invoke the aid of "any court of the United States." 7 U.S.C.A. § 15; 49 U.S.C.A. § 12(2). This appeal presents questions concerning the circumstances in which a federal district court may properly enforce a subpoena issued by the Secretary under § 6(b).

On August 11, 1971, an authorized agent of the Department of Agriculture served a subpoena duces tecum on the president of the Security State Bank and Trust, Fredericksburg, Texas. The subpoena required the bank to produce "all deposit and withdrawal slips, bank drafts, cashiers checks, certified checks, money orders, loans, debit and credit memoranda, or similar negotiable instrument" which had been purchased by, or issued to, Dr. William R. Newton, Mrs. Ruth Newton, and Dr. G. Lloyd Hollister during the months of July, August, September, and October, 1970. The subpoena stated that an examination of these records was "essential" to a certain investigation concerning "trading in the September 1970 shell egg future on the Chicago Mercantile Exchange." On the advice of counsel, the bank informed the agent that it would not comply with the subpoena voluntarily.

1. Act of September 21, 1922, ch. 369, § 6 (b), 42 Stat. 1001, *as amended by* Act of June 15, 1936, ch. 545, §§ 8(e)–8(g), 49 Stat. 1499; Act of June 16, 1955, ch. 151, 69 Stat. 160; *and* Act of Oct. 15, 1970, Pub.L. 91–452, tit. II, § 202, 84 Stat. 928. The relevant statutory language is codified at 7 U.S.C.A. § 15.

2. The Secretary's power under § 6(b) is defined by reference to, and duplicates, the subpoena power of the Interstate Commerce Commission under 49 U.S.C.A. §§ 12(1), (2), (3). For this reason, subsequent citations to relevant statutory language may sometimes include references both to 7 U.S.C.A. § 15 and to the relevant sections to Title 49.

On April 6, 1972, the government petitioned the district court for an order requiring the bank to comply. The court directed the bank to appear and to show cause why it should not be required to comply. Dr. Newton, Mrs. Newton, and Dr. Hollister then filed a motion for leave to intervene and a motion to quash the subpoena. There was no objection to the motion to intervene. The court granted the motion and set the case down for hearing.

At the subsequent hearing, the bank and the intervenors argued that the Secretary had no statutory authority to issue a subpoena of this kind and, further, that the records described in the subpoena were irrelevant to any legitimate investigation. The government maintained, of course, that the subpoena should be enforced. The arguments on both sides were supported neither by testimony nor by documents introduced formally into evidence, though counsel and the court made reference to the subpoena itself and to an affidavit of the agent who had served the subpoena on the bank. Copies of the subpoena and the affidavit had accompanied the government's enforcement petition. The subpoena contained a description of the records that were sought, together with a specification of the time and place the records were to be produced, and a short explanation, quoted above, of the relation between these records and a certain investigation concerning trading on the Chicago Mercantile Exchange. The affidavit contained nothing more than a narration of the events that had transpired between the time the subpoena was served and the time the agent was informed that the bank would not comply.

The district court ultimately held that the Secretary had power to issue the sub-

poena. The court entered an order requiring the bank to comply. The bank and the intervenors appealed.

The appellants raise two questions. They contend, first, that the Secretary's subpoena power under § 6(b) extends only to proceedings and investigations instituted under § 6(b), and that, because there is no showing here that the investigation described in the subpoena was instituted under that section, the subpoena cannot be enforced. Second, the appellants contend that even if the Secretary's subpoena power extends to investigations and proceedings instituted under other sections of the Act, the government has failed to show either that the present investigation is for a legitimate purpose or that the records in question are relevant to the investigation. The appellants contend that such a showing is a prerequisite to judicial enforcement of the subpoena. These contentions will be considered in turn.

## I.

In addition to conferring subpoena power, § 6(b) outlines a formal adjudicatory process which the Secretary must follow if he wishes to revoke the trading privileges of a person who has violated the substantive provisions of the Act. The appellants argue that because the language which confers the subpoena power is embedded in § 6(b), the scope of the subpoena power is restricted by the scope of the adjudicatory procedure outlined therein. We reject this interpretation.

In 1955 Congress amended § 6 (b) to extend the Secretary's subpoena power to "any investigation or proceeding" under the Act.[3] Formerly, the Sec-

3. 7 U.S.C.A. § 15:
   "For the purpose of securing effective enforcement of the provisions of this chapter, and for the purpose of any investigation or proceeding under this chapter, the provisions, including penalties, of section 12 of Title 49, as amended, and supplemented, relating to the attendance and testimony of witnesses and the production of documentary evidence, are made applicable to the power, jurisdiction, and authority of the Secretary of Agriculture (or any person designated by him), the commission, and

retary had enjoyed subpoena power only with regard to "proceedings" under the Act. Act of September 21, 1922, ch. 369, § 6(b), 42 Stat. 1001, *as amended* Act of June 15, 1936, ch. 545 §§ 8(e)–8(g), 49 Stat. 1499. Thus the purpose of the 1955 amendment was to enhance the Secretary's investigatory power by enabling him to subpoena witnesses and documentary evidence for the purpose of "investigations", as opposed to formal "proceedings". See S.Rep.No.268, 1955 U.S.Code & Admin.News, p. 2060.

■ The Secretary's investigatory powers arise principally under § 8 of the Act. 7 U.S.C.A. § 12. They are clearly distinguishable from the Secretary's power to conduct formal adjudicatory proceedings under § 6(b). The only reasonable construction of the 1955 amendment is that it extended the subpoena power to *investigations,* which arise principally under § 8. Yet the appellants would restrict the effect of that amendment to instances in which the Secretary exercises adjudicatory power in formal proceedings under § 6(b). This approach is plainly inconsistent with the congressional purpose.

Further, the appellants' approach is inconsistent with the plain meaning of the relevant statutory language. Section 6(b) provides that the Secretary may issue subpoenas "for the purpose of any investigation or proceeding under this *Act*" (emphasis supplied). If Congress had intended the suboena power to extend only to investigations or proceedings under § 6(b), we can assume that it would have adopted language more consistent with such a purpose. The appellants would have us amend the statute by interpreting it to mean that the subpoena power extends to "any investigation or proceeding under this *section.*" This we are unwilling to do.

We thus hold that the Secretary is not required to show that his subpoena is re-

lated to an investigation or proceeding under § 6(b).

## II.

Yet to be considered are the questions whether the Secretary must show nonetheless, as the appellants contend, that his subpoena is in aid of an investigation initiated for some lawful purpose and, further, that the materials which the subpoena seeks are relevant to the investigation. For the reasons hereinafter stated, we hold that the Secretary must show both that the investigation is for a lawful purpose and that the materials are relevant to it.

Congress has given the Secretary power to issue subpoenas, but it has not given him power to enforce them. This bifurcation of power is not without reason. In Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894), the Supreme Court suggested by way of dictum that an administrative agency which enjoys subpoena powers of the kind enjoyed by the Secretary cannot "under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment." 154 U.S. at 485, 14 S.Ct. at 1136.

Whether or not this dictum states a presently controlling principle of constitutional law, the Commodity Exchange Act imposes upon the subpoena powers of the Secretary a statutory limitation which is consistent with the principle enunciated by the *Brimson* court. The result is a statutory division of activity between the Secretary and the district court. The role of the latter is vital and well defined.

■ The statute expressly provides that the Secretary may invoke the aid of the court to compel obedience to his subpoena and, further, that the court may enforce his subpoena where the subpoena

---

any referee designated pursuant to the provisions of this chapter, and to any person subject thereto."

This subpoena provision, enacted as a part of § 6(b), has been codified as a separate section.

aids an investigation or proceeding "under" the Act, and where it seeks documents "relating to any matter under investigation." 7 U.S.C.A. § 15; 49 U.S. C.A. § 12(1). In short, the statute establishes two criteria which govern the court's enforcement power: (1) the investigation or proceeding must be for a proper statutory purpose (that is, it must arise "under" the Act), and (2) the documents sought must be relevant to the investigation or the proceeding. Absent these criteria being satisfied, we conclude that the district court has no statutory authority to enforce subpoenas.

This conclusion is buttressed by two additional considerations. First, the Administrative Procedure Act provides that the court shall sustain an administrative subpoena "to the extent that it is found to be in accordance with law." 5 U.S. C.A. § 555(d). In the present context, if we were to hold that the district court could properly sustain subpoenas that do not satisfy the standards imposed by the Act, we would give little or no effect to the mandate of the APA. The Secretary has no subpoena power other than that conferred by statute; and if a subpoena issued by him does not satisfy the statutory criteria, it is simply not "in accordance with law."

■ Second, unless the district court measures the Secretary's subpoena against the two statutory standards and declines to enforce the subpoena if it is in excess of the Secretary's statutory power, the enforcement proceeding will become an empty form; and the court, a rubber stamp. This result could not be reconciled with the policy of the statute. The system of judicial enforcement is designed to provide a meaningful day in court for one resisting an administrative subpoena. Cf. United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). For a discussion of the criteria of lawfulness of purpose and relevancy in the context of analogous administrative schemes, see United States v. Morton Salt, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1949); Oklahoma Press Publishing Co. v. Wall-

ing, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1945).

■ Where the person who is subject to the subpoena refuses to comply and challenges the subpoena in court, the burden is upon the Secretary to show that the investigation is for a lawful purpose and that the evidence sought in the subpoena is relevant to the investigation. This follows from the fact, first, that an affirmative showing of lawfulness is necessary to enable the court to discharge its affirmative duty under the APA. That duty is to determine the extent to which the subpoena is in accordance with law and to enforce the subpoena to that extent. 5 U.S.C.A. § 555(d). Second, the acceptable practice under analogous administrative schemes, as defined by the cases, requires the government to sustain a minimum burden analogous to the one imposed here. The cases teach that the burden is not great, but they teach that it does exist. See, e. g., United States v. Powell, supra, 379 U.S. at 57–58, 85 S.Ct. 248; United States v. Morton Salt, supra, 338 U.S. at 652, 70 S.Ct. 357; Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. at 209, 66 S.Ct. 494.

### III.

We must apply these principles to the facts of the case before us. As noted above, neither the government nor the appellants offered any evidence at the enforcement hearing. The only materials that were brought before the court, aside from the briefs and the arguments of counsel, were the pleadings, the subpoena itself, and the affidavit of the agent who had served the subpoena on the bank.

The strongest showing that emerged from any of these materials was the bare, unsworn allegation that production of the records sought in the subpoena was "essential to an investigation concerning trading in the September 1970 shell egg future on the Chicago Mercantile Exchange." The duty of the district court was to determine the propriety of the subpoena on the basis of this show-

ing. The question for decision is whether an adequate basis existed for enforcement of the subpoena in the face of the slender showing made by the government. We answer in the negative.

The court's first task was to determine whether the investigation was for a lawful purpose. The government alleged that the investigation was to acquire facts concerning trading on the Chicago Mercantile Exchange. The appellants did not rebut this allegation but argued simply that the alleged purpose was impermissibly broad.

 With the case in this posture, the district court determined that the purpose of the investigation was lawful. The appellants did not deny that the purpose of the investigation was what the government claimed it to be; and while it is true that the purpose was broad, the Secretary's investigatory powers are broad as well. The Secretary may undertake "such investigations as he may deem necessary to ascertain the facts regarding the operations of boards of trade and other person[s] subject to any of the provisions of this chapter." 7 U.S.C.A. § 12. On the face of things, an investigation whose purpose is to ascertain facts concerning trading on the Chicago Mercantile Exchange is well within the Secretary's investigatory power; and for this reason the unrebutted allegation of purpose sufficed as a basis for the court's judgment on the initial question of law: Was the stated purpose lawful? It was.

The next question was one of fact: Were the records relevant to the investigation? The only showing before the court was the government's conclusory allegation that the records were relevant ("essential"). The government did not allege underlying facts that were suggestive of such a relation. The showing was not sufficient. Here the court's duty was to exercise judgment on a question of fact; yet there were no facts before it, and there was, and is, no judicially noticeable relation in fact between trading on the Chicago Mercantile Exchange and bank records in Fredricksburg, Texas.

It was the burden of the government, not the appellants, to show that such a relation existed. By enforcing the subpoena, the government was in effect relieved of this burden. The result was that there was no basis on which it could be determined that the administrative subpoena extended only to evidence that was relevant to matters properly under investigation.

On appeal the government suggests that it has in its possession information that demonstrates a relation between the trading under investigation and the records sought in the subpoena. This information may be properly considered by the district court on remand.[4]

The order of the district court is vacated and the cause remanded for further proceedings not inconsistent herewith.

---

4. The government makes an appellate objection to the intervenors having been allowed to intervene. There was no objection in the district court to the intervention and the point was not preserved by taking a cross-appeal. We do not consider it.