SECURITIES AND EXCHANGE COMMISSION, Applicant-Appellee,

v.

Robert HOWATT et al., Respondents-Appellants.

No. 75–1150.

United States Court of Appeals, First Circuit.

Argued Sept. 9, 1975.

Decided Oct. 31, 1975.

Jeffrey M. Smith, Boston, Mass., with whom Paul T. Smith and Harvey R. Peters, Boston, Mass., were on brief, for respondents-appellants.

Michael J. Stewart, Asst. Gen. Counsel, with whom Lawrence E. Nerheim, Gen. Counsel, David Ferber, Sol., and Martin S. Berglas, Atty., Washington, D. C., were on brief for applicant-appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and THOMSEN, Senior District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from an order entered after a hearing in the district court enforcing subpoenas duces tecum that were issued by the Securities and Exchange Commission in the course of an investigation into alleged securities law violations.[1]

In its verified complaint and attached exhibits, and orally at the district court hearing, the SEC represented as follows: On May 8, 1973, it had issued an order authorizing a private investigation into reports that Aurre & Company, Inc., a Delaware company registered with the Commission as a broker-dealer, and others were offering and selling securities to the public under circumstances amounting to violations of law.[2] Among the securities supposedly being sold were ones of appellant Armstead Corporation and appellant H and L Management Company. The order directed an investigation to determine whether "the aforesaid persons" (a group that included Armstead and H and L Company) and "any other persons" had engaged or were about to engage in any of the reported or similar acts or practices.

Separate subpoenas to Armstead, to H and L, and to each of their two principals, appellants Landry and Howatt,[3] were thereupon issued, and, after some legal fencing that is immaterial, reissued. The subpoenas addressed to the two firms called for financial statements, names and addresses of investors, prospectuses, and related information. Armstead was also directed to bring in its stock records, and H and L to bring "records reflecting the issuance of debentures, notes or any other security." Landry and Howatt individually were to bring any records of sales of securities of Armstead, H and L, and several other named concerns, together with any literature used in connection with their sale.

At the hearing below, the Commission's counsel said, in response to the court's questions, that its investigation was initiated upon a written complaint from a broker whose clients had purchased some of the securities in question, and that the Commission staff had later interviewed the investors directly. Stating that it "does not sit in substitution of the SEC," the district court declined to take testimony from appellants concerning their contentions that they did not use the mails, that there was no printed material and no public offering, and that there was never any conduct placing them within the jurisdiction of the SEC. The court said,

---

* Of the District of Maryland, sitting by designation.

1. Power in connection with such investigations to subpoena witnesses and require the production of books and records is conferred upon members and designated officers of the SEC by 15 U.S.C. § 78u(b). The District court may enforce the subpoenas, § 78u(c).

2. The order and investigation were pursuant to 15 U.S.C. §§ 77t(a) and 78u(a). In the order, the Commission stated that the securities were unregistered, and that those selling and offering them had purportedly made untrue and misleading statements and engaged in possible fraudulent practices, in violation of sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5.

3. Landry and Howatt are President and Treasurer of Armstead, a Massachusetts corporation. They are also general partners of H and L, a partnership. As former Aurre employees, they are alleged by the SEC to have participated with Aurre in the offerings and sales under investigation.

"I will hear all of the grounds of your objections to the issuance of subpoena, don't misunderstand me. But I am not going to sit in substitute and exercise the powers that are reserved to the SEC."

After the hearing, the court ordered Landry and Howatt, in their capacities as officers of Armstead and partners of H and L, to produce all the documents described in the subpoenas addressed to the two firms. They were also directed, as individuals, to furnish the documents described in the subpoenas addressed to them individually.

■ We find no merit in appellants' contentions that the district court denied them rights under the fourth and fifth amendments and under Fed.R.Civ.P. 81(a)(3). The Commission is not required by statute or the Constitution to limit its investigations to those against whom "probable" or even "reasonable" cause to suspect a violation has been established.[4] The Commission has, as the Supreme Court said of the Federal Trade Commission in *United States v. Morton Salt*, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950), a power of "original inquiry." *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946). It may "in its discretion, make such investigations as it deems necessary to determine whether any person has violated or is about to violate [the securities laws]," 15 U.S.C. § 78u(a). The Commission's subpoena powers are conferred "[f]or the purpose of any such investigation," § 78u(b). There are, to be sure, limitations: the Commission's inquiry must be for a proper purpose; the information sought must be relevant to that purpose; and statutory proce-

dures must be observed. *See United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In addition to satisfying itself as to such matters, a court asked to enforce a subpoena has a broad power of inquiry to ensure that its process is not abused should, for example, the Government appear to be acting in bad faith. *Id.* But, as the district court correctly recognized here, it is not the court's role to intrude into the investigative agency's function. Congress committed securities investigations to the SEC, not the courts.

■ Here the court made sufficient inquiry to satisfy itself that the investigation and subpoenas were legally authorized and properly motivated, and for a purpose related to the Commission's powers. It did not, it is true, hold an evidentiary hearing, but under the circumstances one was not needed. Appellants offered no meaningful evidence that the Government might be exceeding or abusing its investigatory powers.

■ The issues which appellants told the court they wanted to air at an evidentiary hearing involved whether or not they and their transactions were within the SEC's regulatory jurisdiction. The record is murky on that point. But, while SEC coverage is unclear, its absence is likewise unclear. It appears that H and L issued promissory notes or debentures, which generally are within the definition of a security, *see* 15 U.S.C. § 77b(1). Fraud in connection with the issue of securities of a company whose operations are intrastate may in certain circumstances be actionable by the Commission. 15 U.S.C. §§ 77q(a) & (c); 78j(b). In any event, appellants may not litigate questions having to do with the

4. We agree with the court in *Securities & Exch. Comm'n v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1054–55 (2d Cir. 1973), that *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), is not to be read as modifying the less stringent standards enunciated in *United States v. Morton Salt*, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950), and similar cases with respect to administrative subpoenas for the production of books and records. *See* was mistakenly cited by appellants here (and by appellants in *Brigadoon*) for the proposition that the fourth amendment requires an agency to demonstrate "reasonable grounds" to issue subpoenas and not merely demonstrate that the inquiry is legitimate under the governing statute and the documents requested relevant to the inquiry. *See*, however, dealt with the distinguishable situation of an unauthorized entry upon premises.

application and coverage of the federal securities laws before responding to subpoenas designed to produce the very information that may be needed to shed light upon those questions. We agree with the Second Circuit in *Securities & Exch. Comm'n v. Brigadoon Scotch Dist. Co.,* 480 F.2d 1047, 1052–53 (1973), that whether or not certain activities are subject to SEC regulation is not to be decided in a subpoena enforcement action. Rather the Commission "must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." *Id.* at 1053. We can add nothing to the *Brigadoon* court's discussion of the law in this area.

 Appellants seek to block the production of H and L's partnership records on the ground that since there is no affirmative evidence of H and L's independent institutional character, Howatt and Landry—the general partners—are shielded by their personal privilege against self incrimination from producing the records. *See Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). However, this argument, like several others raised on appeal, was not presented below either before the Commission or the court. It may not now be pursued as a ground for overturning the district court's order enforcing the subpoenas. *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir. 1974); *Roto-Lith, Ltd. v. F. P. Bartlett & Co.,* 297 F.2d 497, 500 (1st Cir. 1962); *Bird v. United States,* 241 F.2d 516, 520 (1st Cir. 1957). In the absence of any challenge, the Commission was under no duty to prove that the partnership was not a non-entity. The burden of raising and presenting facts in support of this at best uphill defense was upon appellants.

 Indeed, not only did appellants fail to raise below the specific point concerning H and L's partnership records, they did not make it clear that they were invoking the privilege against self-incrimination. Their most meaningful reference to the privilege in the district court was counsel's assertion, in the course of other remarks, that "the subpoena . . . is an attempt to procure something that cannot be given because it in a sense would be giving evidence against ourselves if in fact we had committed a crime." Earlier, counsel had said,"I hate to rely on the idea of self-incrimination, but we have not done anything that I feel we should invoke the particular thing." These remarks fell short of indicating that the appellants, or any of them, had elected to claim the privilege. A subpoena is not invalid simply because it may encompass documents against which the privilege may be raised. The party subpoenaed is in the best position to know if the material sought is incriminatory, and whether he desires to raise the privilege. If he does so desire, his actions must be such that the agency or court can reasonably be expected to understand that he is invoking the privilege. *See Quinn v. United States,* 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955); *cf. Sherman v. Hamilton,* 295 F.2d 516, 522 (1st Cir. 1961), *cert. denied,* 369 U.S. 820, 82 S.Ct. 827, 7 L.Ed.2d 785 (1962). Appellants here argued primarily that the SEC was without jurisdiction and, in effect, that the investigation as to them was groundless. They never made clear that they meant to stand upon the privilege or, if so, their grounds. Nor was the court told with respect to which documents or which of the four parties the claim, if any, might attach. Plainly it could not attach to all parties equally. While Howatt and Landry might be able to assert the privilege as to their personal records, *see, e. g., Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), artificial organizations such as the corporation (and, most probably, although we do not decide the question, the partnership) could not. *See Bellis v. United States, supra; United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). We thus find no basis under the fifth amendment to

reverse the orders below. Whether one or more of appellants may raise the fifth amendment in future proceedings as a defense to sanctions proposed for non-compliance with the order enforcing the subpoenas is a question we do not now reach.

Appellants also ask us to reverse on other grounds, such as that the "H and L Management Company" was mis-named "H and L Company" in the SEC investigatory order and that Howatt and Landry are not the official custodians of Armstead's books and records. The first point is patently frivolous. The second one was never raised below and would, at most, be a matter for further consideration by the Commission or the district court should it appear that Howatt and Landry are genuinely and in good faith unable to procure the records in question notwithstanding the corporate offices they hold. We find no merit in any remaining contentions.

*Affirmed.*