**CIVIL AERONAUTICS BOARD, Plaintiff,**

v.

**FRONTIER AIRLINES, INC., Defendant.**

**Civ. A. No. 78–C–800.**

United States District Court, D. Colorado.

April 13, 1979.

## OPINION AND ORDER

CHILSON, Senior District Judge.

### PRELIMINARY STATEMENT

The plaintiff (Board) asserts an unlimited right of access to all minutes of meetings of the defendant's Board of Directors and its Executive and Audit Committees from March 31, 1977, through March 31, 1978, and made demand upon the defendant to produce the minutes for the Board's inspection.

Defendant (Frontier) refused the demand unless and until the CAB stated the purpose for the demand and limited its demand to those portions of the minutes which were reasonably definite and relevant to a proper investigative purpose.

This litigation resulted and cross motions for summary judgment were filed and are presently before the court for determination.

Both parties agree that there is no material issue of fact to be determined in order for the court to dispose of the motions and at the Court's request, have filed an agreed statement of facts which are here set forth:

"AGREED STATEMENT OF
UNDISPUTED FACTS"

"Plaintiff and Defendant, by their attorneys, submit the following Agreed Statement of Undisputed Facts for purposes of their Cross-Motions for Summary Judgment:

"1.  On June 14, 1978, in the course of a routine examination of the books of account of Frontier Airlines, Inc. ('Frontier'), Larry H. Price, a duly-authorized auditor of the Civil Aeronautics Board ('CAB') requested access to all minutes of meetings of Frontier's Board of Directors and its Executive Audit Committees from March 31, 1977 through March 31, 1978.

"2.  Said minutes are required to be kept by Frontier pursuant to 14 C.F.R. § 249.-13 (Schedule of Records—Items 3(a) and (b)).

"3.  In response to the request, Frontier's Vice-President—Legal and Corporate Secretary, David N. Brictson, asked Mr. Price why he needed to review the requested minutes and how those minutes were relevant to the audit being conducted.

"4.  Mr. Price answered by displaying a page from his audit program, the relevant portion of which reads as follows:

'Review copies of all minutes of meetings of the Board of Directors and its various Committees (e. g., Executive, Audit, etc.) from the time of the last review to the latest meeting held. Note the occurrence of all major transactions approved since period of last audit.'

"Mr. Price declined to provide any further explanation and demanded access to the requested minutes.

"5.  On behalf of Frontier, Mr. Brictson then refused Mr. Price access to the requested minutes.

"6.  On June 20, 1978, Mr. Brictson confirmed Frontier's denial of access to the requested minutes in a telephone conversation with Enforcement Attorney Mary E. Downs, a Board Special Agent, stating that Frontier would not honor the request until the CAB met the requirements of *CAB v. United Air Lines, Inc.,* [7 Cir., 542 F.2d 394] namely, to state the purpose of its audit and to limit its request to one which was reasonably definite and reasonably relevant to a proper investigative purpose.

"When presented with a hypothetical request from Ms. Downs for all minutes relating to the acquisition of aircraft, Mr. Brictson stated that Frontier would honor such a request.

"During the same telephone conversation, Ms. Downs informed Mr. Brictson of the purpose of the Board's investigation, namely, to determine the accuracy of the information contained in Frontier's books of account for the period from October of 1976 to March 31, 1978.  However, she stated that the 'United test' did not apply to Board of Directors' minutes.  The original request was again made and again refused, and Ms. Downs stated to Mr. Brictson that legal proceedings would be commenced by the CAB against Frontier to enforce the request.

"7.  That afternoon, Frontier commenced an action in this Court *Frontier Airlines, Inc. v. Civil Aeronautics Board,* Civil Action No. 78–C–614, wherein it sought declaratory and injunctive relief from the CAB's demand.  That action was voluntarily dismissed by Frontier when the within enforcement action was commenced by the CAB in the United States District Court for the District of Columbia and subsequently transferred to this Court.

"8.  On August 28, 1978, William L. Hunnicutt, one of the attorneys for Frontier, communicated the following offer to Scott Crabtree, one of the attorneys for the CAB:

'Frontier is willing to produce for the CAB's inspection all portions of the requested minutes which address or are related to any entries in its books of account or other information reported to the CAB.'

"9.  On the following day, August 29, 1978, Mr. Crabtree informed Mr. Hunnicutt by telephone that the CAB rejected

that offer and would not accept anything less than an opportunity to inspect all of the minutes requested.

"10. By letter dated September 8, 1978, Mr. Hunnicutt related the additional following offer on behalf of Frontier to Mr. Crabtree on behalf of the CAB:

'Frontier will voluntarily produce for the CAB's inspection *all* resolutions approved by Frontier's Board of Directors and its Executive Committee during the period from January 1, 1977 to the present.'

"11. As of the date of the filing of this Agreed Statement of Undisputed Facts, the CAB has not accepted either of the foregoing offers from Frontier, and Frontier has continued to refuse to produce all of the requested minutes for the CAB's inspection.

"12. In addition to the two offers described above, Frontier has at all times been willing to honor all requests from the CAB which are reasonably specific and reasonably relevant to a proper investigative purpose. The CAB at all times has contended that the request for the subject minutes need not be reasonably specific or reasonably related to a proper investigative purpose.

"13. As a supplement to the foregoing facts, both parties accept as true and accurate and incorporate herein by reference thereto all exhibits and affidavits attached to their respective Memoranda in Support of their Motions for Summary Judgment, with the following exceptions:

"a. With respect to paragraphs 8 through 11 of the Affidavit of David N. Brictson, the CAB acknowledges only that there are in all probability matters discussed in the requested minutes which are not reasonably related to a proper investigative purpose of the CAB.

"b. With respect to paragraph 7 of the Affidavit of Glenn W. Wienhoff, Frontier acknowledges only that there are in all probability matters discussed in the requested minutes which are reasonably related to a proper investigative purpose of the CAB."

## DISCUSSION

The parties have filed briefs in support of and in opposition to the respective motions and oral argument was had in open court.

49 U.S.C.A. § 1377(e) (1976) (§ 407(e) of the Federal Aviation Act of 1958, as amended) states in pertinent parts:

"The Board shall at all times have access to all lands, buildings, and equipment of any air carrier or foreign air carrier and to all accounts, records, and memorandums, including all documents, papers, and correspondence, now or hereafter existing, and kept or required to be kept by air carriers, foreign air carriers, or ticket agents and it may employ special agents or auditors, who shall have authority under the orders of the Board to inspect and examine any and all such lands, buildings, equipment, accounts, records, and memorandums."

That the minutes of the meetings of the defendant's Board of Directors, Executive Committee and Audit Committee are records and memorandums kept or required to be kept by Frontier by Section 407(e) is not questioned.

The question here involved is whether or not the authority granted by Section 407(e) is limited or unlimited and if limited, the nature and extent of those limitations.

The Board contends that its inspection authority conferred by Section 407(e) is unlimited (with the possible exception of communications between Frontier and its attorneys).

Frontier contends that the Board's inspection authority is limited to those documents which "are relevant to a proper investigative purpose." (Frontier's brief in support of its motion for summary judgment at page 4).

In support of their respective contentions, the parties cite and discuss a number of cases which the Court has considered.

The court concludes that the questions here involved should be determined by the application of the rules set forth in the Seventh Circuit Court of Appeals decision

446

in *CAB v. United Airlines, Inc.*, 542 F.2d 394 (1976), hereafter referred to as "*United.*"

In *United,* the court in the first paragraph of its opinion stated:

"In this appeal by the Civil Aeronautics Board we must decide whether § 407(e) of the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1377(e) (Supp. V, 1975), gives the Board inspection powers equivalent to a continuing general search warrant, as the Board contends. We hold that there are limits to the Board's inspection powers, and affirm the summary judgment entered by the District Court against the Board. 399 F.Supp. 1324 (N.D.Ill.1975)." *Id.* at 395.

The opinion then discusses at some length authorities bearing on the questions before it, including most of the cases cited by counsel in the instant case, and came to the following conclusion:

"In summary, the decisions uniformly require that an investigative demand be reasonably definite and reasonably relevant to some proper investigative purpose. The Board cites no case, and we have found none, holding that any statute has conferred a general warrant power on any agency. Such a statute would at least raise serious problems under the Fourth Amendment. With this background, we turn to the statute before us." *Id.* at 399.

With particular reference to Section 407(e) *United* states:

"We find nothing in the legislative history, the scheme of the Act, or the regulatory powers which are to be aided by the inspection power to support the view that Congress intended the Board to have the plenary inspection powers it claims. In light of this, and of the judicial precedents discussed earlier in this opinion, § 407(e) should not be read to confer on the Board the claimed investigative powers equivalent to a perpetual general warrant." *Id.* at 401.

The court further stated:

"We believe·that, in adopting § 407(e), Congress intended to give the Board power to investigate any subject properly within its jurisdiction and to inspect any carrier records reasonably relevant to such an investigation. There are no doubts based on the Fourth Amendment that would justify construing the statute to deny the power." *Id.* at 401.

After a discussion of the authorities supporting the above statement, the *United* court concluded:

"that if a carrier's records are reasonably relevant to an investigation the Board is empowered to make, they may be inspected under § 407(e)." *Id.* at 402.

With respect to the relevancy of the records sought, the court stated:

"Determining the relevancy of the documents sought is the agency's responsibility in the first instance. *Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. [186] at 214–216, 66 S.Ct. 494 [90 L.Ed. 614]. Given the requirement that a demand be reasonably relevant to a proper investigative purpose, the Board must of course have such a purpose to make the necessary determination of relevance itself. Further, the Board must disclose its purpose to enable a court to make a determination of relevance. Otherwise no inquiry 'into the underlying reasons for the examination', *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), is possible. This obligation is of course not satisfied by the recital that the purpose of the investigation is to determine compliance with the law. The same could be said for any general warrant. *Cf. Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. at 207, n. 40, 66 S.Ct. 494." *Id.* at 402.

We turn now to the application of *United* to the Agreed Statement of Facts, which summarized reveal that in June 1978, the Board commenced a routine audit of defendant's books of account. On June 14, 1978, in the course of making the audit, the Board requested access to all minutes of· meetings of Frontier's Board of Directors and its Executive and Audit Committees from March 31, 1977 through March 31, 1978.

Frontier requested the Board to disclose the purpose for its demand and the relevancy of the minutes to the audit being conducted. An auditor for the Board displayed a page from his audit program, the relevant portion of which reads as follows:

"Review copies of all matters of all meetings of the Board of Directors and its various committees (e. g., Executive, Audit, etc.) from the time of the last review to the latest meeting held. Note the occurrence of all major transactions approved since period of last audit." Paragraph 4, Agreed Statement of Facts.

Frontier refused to produce the minutes and on July 19, 1978, the Board instituted this action.

Thereafter, Frontier made offers to produce certain portions of the minutes (see paragraphs 8 and 10, Agreed Statement of Facts). The offers were refused and the Board persisted in its demand for the entire minutes.

After the case was submitted to the court, the Court at a conference with counsel for both parties, requested of Frontier a clarification of its offers to produce and with the consent of the Board's counsel, Frontier on April 11, 1979, filed the clarification requested which stated that it intended to offer "the entirety of the minutes of its Audit Committee during the relevant time period" and intended to offer to produce portions of the minutes of its Board of Directors and of its Executive Committee "setting forth any action taken by said body on any transaction coming before them." These offers have not been accepted.

As the record now stands, the minutes in controversy have been narrowed, but the question remains whether or not Frontier should or should not be required to submit to the Board for its examination, *all* of the minutes of the Board of Directors and the Executive Committee from March 31, 1977 through March 31, 1978.

The Agreed Statement of Facts reveal that Frontier contends that the minutes in question contain certain matters not relevant to a proper investigative purpose and the Board acknowledges that there are in all probability matters discussed in the requested minutes which are not reasonably related to a proper investigative purpose of the Board. (Paragraph 13(a), Agreed Statement of Facts.)

The only investigative purpose disclosed by the Board to Frontier in support of its request for the entire minutes is to "Note the occurrence of all major transactions approved since period of last audit." (Paragraph 4, Defendant's Supplement to Agreed Statement of Facts.)

The court concludes that on the record before it, other matters contained in the minutes are not relevant to the investigative purpose disclosed by the Board and the Board has disclosed no proper investigative purpose which would require the production of the minutes in their entirety. Frontier is not required to produce the same for the Board's inspection. To hold otherwise would, in effect, construe Section 407(e) as granting to CAB unlimited powers of inspection equivalent to a general warrant, powers which this Court holds the Board does not have.

The Board having failed to accept Frontier's offer to produce and having demanded the issuance of an order which would amount to a general warrant, the Court concludes that the Board is entitled to no relief and its motion for a summary judgment should be denied.

The court further concludes that Frontier's motion for summary judgment of dismissal of the complaint with prejudice should be granted.

IT IS THEREFORE ORDERED that the plaintiff's motion for a summary judgment is denied and that the defendant's motion for summary judgment of dismissal of the complaint with prejudice is hereby granted and final judgment of dismissal of the complaint with prejudice shall forthwith enter.