SUNSHINE GAS COMPANY,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al., and United States of America.

Civ. A. No. CA-4-80-205.

United States District Court,
N. D. Texas,
Fort Worth Division.

April 13, 1981.

As Amended April 14, 1981.

Cantey, Hanger, Gooch, Munn, & Collins, Cecil E. Munn, Ralph H. Duggins, III, and Stephen L. Tatum, Fort Worth, Tex., for plaintiff.

Kenneth J. Mighell, U. S. Atty., Anthony W. Vaughn, Asst. U. S. Atty., Fort Worth, Tex., David M. Glass, Dept. of Justice, Ellen Rosenberg-Blatt, Dept. of Energy, Washington, D. C., for defendant.

## MEMORANDUM OPINION

BELEW, District Judge.

Plaintiff, Sunshine Gas Company, a Texas corporation with its principal place of business in North Carolina, seeks judicial review and a permanent restraining order to prevent enforcement of a special report order (SRO) issued by the Department of Energy, 10 C.F.R. § 205.8(b)(2).[1] As part of an ongoing investigation of an undisclosed principal subject, the Energy Department suspects Sunshine Gas as one in a group of interlocking companies engaged in the practice of inter-company sales of petroleum or petroleum products, 10 C.F.R. § 205.201(a). These sales allegedly exceed the maximum prices permitted under the Department of Energy's mandatory petroleum price and allocation regulations, 10 C.F.R. § 212.10.

In order to verify their suspicions, the Department of Energy commenced an investigation and through the issuance of a SRO, sought (1) all records pertaining to the ownership or control of the company during the period January 1, 1974 until May 15, 1980, including but not limited to: stock transfer ledgers, voting trust agreements, franchise tax records, 10–K and 10–Q reports, P–5 reports, and articles of incorporation, and (2) all records which state or local governments require of the company reflecting production, purchase, sale, taxation, or transportation of petroleum or petroleum products, interspersed from August, 1974 until April, 1980, including but not limited to: P–1, P–2, P–3, and T–1 reports filed with the Texas Railroad Commission.

Sunshine Gas refused to comply with the SRO, and unsuccessfully appealed through the Department of Energy. It next brought suit in federal court, seeking judicial invalidation. The United States Government, as a necessary party, § 209 Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, and § 5(a)(1) Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751, *et seq.*, counterclaimed asserting the SRO was valid and prayed for its enforcement, 10 C.F.R. § 205(8)(3).

*Jurisdiction*

This Court has jurisdiction by the authority of § 206 and § 211 of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, incorporated by § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751 *et seq.*; § 13(e)(2) of the Federal Energy Administration Act of 1974, 15 U.S.C. § 761 *et seq.*; §§ 645 and 705 of the Department of Energy Organization Act, and 10 C.F.R. § 205.8 and § 205.201.

*Plaintiff's Complaint*

Sunshine Gas contends (1) the Department of Energy lacks jurisdiction, (2) there is no pending investigation by the Department of Energy against it, (3) the information sought by the SRO has no relevance to any legitimate purpose and (4) harassment.

---

1. A special report order is similar to an interrogatory. It seeks specific answers to specific questions.

It prays for judicial review of the SRO, a permanent injunction restraining enforcement, and costs.

*Defendant's Answer*

On information and belief, the Department of Energy suspects Sunshine Gas of engaging in the buying and selling of petroleum or petroleum products, and of interlocking sales and purchases of such goods in excess of that allowed by law. The Department of Energy asserts, as essential, the use of the SRO in order to "smoke out" these violations. It therefore prays for dismissal of said action, with prejudice and costs.

*Issue of Law*

The single dominant issue: is the Department of Energy required, as a matter of law, to give Plaintiff Sunshine Gas more than a general statement of purpose regarding the reason for its investigation.

*Discussion*

 The Court is aware that its role in enforcing an administrative subpoena is a narrow and limited performance. *Oklahoma Press Publishing v. Walling,* 327 U.S. 186, 217 n.57, 66 S.Ct. 494, 507 n.57, 90 L.Ed. 614 (1946); *Endicott Johnson v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *F.T.C. v. Anderson,* 631 F.2d 741, 744 (D.C.Cir.1979); *F.T.C. v. Texaco,* 555 F.2d 862, 871–72 (D.C.Cir.) (en banc), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977); *F.T.C. v. Rockefeller,* 441 F.Supp. 234, 240 (S.D.N.Y.1977). It is confined to determining (1) whether the subpoena was issued for a *lawfully authorized purpose* and (2) whether it seeks information *relevant* to the agency's inquiry. If these questions are resolved in the affirmative, the subpoena is valid and must be enforced. *United States v. LaSalle National Bank,* 437 U.S. 298, 313, 98 S.Ct. 2357, 2365, 57 L.Ed.2d 221 (1978); *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964), *Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. at 209, 66 S.Ct. at 505; *Endicott Johnson v. Perkins, supra,* 317 U.S. at 509, 63 S.Ct. at 343; *United States v. First City National Bank of El Paso,* 598 F.2d 594, 602 (Em. App.1979); *United States v. Empire Gas*

*Corp.,* 547 F.2d 1147, 1151–52 (Em.App. 1976); *cf. United States v. Bell,* 564 F.2d 953, 959 (Em.App.1977) (where the Emergency Court of Appeals, upon the Fifth Circuit's advice, deleted the last two requirements: (3) the agency does not possess the information, and (4) the required administrative steps have been followed). However, this does not render meaningless the adversary hearing to which the party is entitled before enforcement is ordered. *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255. This Court does not sit as a mere rubber stamp, authorizing unwarranted and unjustified random investigations of companies suspected of violations. Such posture would effectively undermine the concept of judicial supervision of administrative subpoenas.

> " . . . unless the district court measures the Secretary's subpoena against the two statutory standards and declines to enforce the subpoena if it is in excess of the Secretary's statutory power, the enforcement proceeding will become an empty form; and the court a rubber stamp. This result could not be reconciled with the policy of the statute. The system of judicial enforcement is designed to provide a meaningful day in court for one resisting an administrative subpoena."

*United States v. Security State Bank and Trust,* 473 F.2d 638, 642 (5th Cir. 1973); *Accord F.T.C. v. Texaco, Inc., supra,* 555 F.2d at 903; *NLRB v. Northern Trust Co.,* 148 F.2d 24, 29 (7th Cir.) *cert. denied,* 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435 (1945). Moreover, when a court is asked to enforce an administrative subpoena, its process is invoked. The court then has a duty to prevent any abuse of that process, and does so by a thorough investigation. For example, it should pose the question: has the subpoena been issued for an improper purpose? *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255; *United States v. First National Bank of N.J.,* 616 F.2d 668, 674 (3rd Cir. 1980); *Securities and Exchange Commission v. Howatt,* 525 F.2d 226, 229 (1st Cir. 1975); *United States v. Roundtree,* 420 F.2d 845, 849 (5th Cir. 1969) (quoting *Powell, supra*).

■ Two issues need to be resolved in this dispute: does the Department of Energy have jurisdiction over Sunshine Gas, (and) should it be ordered to state a more specific reason for its SRO? The first issue is easily resolved. This Court respects the doctrine the agency, rather than the Court, should in the first instance determine the question of coverage in a preliminary investigation into possible violations. In other words, *Oklahoma Press* and its progeny hold that in subpoena enforcement proceedings, the Court should not entertain challenges to the subpoena *power* based on jurisdictional questions. *Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. at 214, 66 S.Ct. at 508; *Endicott Johnson Corp. v. Perkins, supra,* 317 U.S. at 509, 63 S.Ct. at 343; *I.C.C. v. Gould,* 629 F.2d 847, 852 (3rd Cir. 1980); *United States v. Wickland,* 619 F.2d 75, 78 (Em.App.1980); *C.A.B. v. Deutsche Lufthansa Aktiengesellschaft,* 591 F.2d 951, 952 (D.C.Cir.1979); *F.T.C. v. Texaco, supra,* 555 F.2d at 879; *F.T.C. v. Gibson,* 460 F.2d 605, 608 (5th Cir. 1972); *State Fair of Texas v. U. S. Consumer, Etc.,* 481 F.Supp. 1070, 1075 (N.D.Tex.1979). It is the second issue—enforcement of the SRO—which this Court now turns and directly addresses.

■ As stated earlier, a District Court should thoroughly examine the purposes underlying enforceable subpoenas. The United States Supreme Court reinforces this view. "A governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1948). Therefore, compliance will be ordered if and only if, "... the inquiry is with the authority of the agency, and the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co., supra,* 338 U.S. at 652, 70 S.Ct. at

369; *F.T.C. v. Anderson, supra,* 631 F.2d at 745; *F.T.C. v. Texaco, Inc., supra,* 555 F.2d at 872; *Montship Lines, Ltd. v. Federal Maritime Board,* 295 F.2d 147 (D.C.Cir. 1961); *F.T.C. v. Stanley H. Kaplan Educational Center, Ltd.,* 433 F.Supp. 989, 992 (D.Mass.1977). "The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Publishing Co. v. Walling, supra,* 327 U.S. at 208, 66 S.Ct. at 505. But the determinative element is relevance. And the standard in regards to an administrative subpoena, either adjudicative or investigative, is whether the information sought is "reasonably relevant"[2] to the agency's inquiry. *F.T.C. v. Anderson, supra,* 631 F.2d at 745; *F.T.C. v. Texaco, Inc., supra,* 555 F.2d at 873.

■ The reasonableness of the order under review is dependent upon the relevancy of the information sought. Yet, a failure to state the purpose precludes a determination of the relevancy.

" 'Relevance' simply cannot be determined in the absence of defined 'purpose,' whether that purpose be as sharply defined as in a criminal trial, less precisely delineated as in a civil proceeding, or more generally defined as in a grand jury inquiry or in an administrative agency investigation as here. In all situations, purpose in some degree must be defined ... and relevance thereafter may be assessed."

*F.T.C. v. Texaco, Inc., supra,* 555 F.2d at 905 (dissenting opinion). The agency's order should only be affirmed if a rational basis exists, but such must be supplied by the agency, not the court. The court needs to satisfy itself major policy issues were considered and the reasons for the agency's actions clear. *Mt. Airy Refining Co. v. Schlesinger,* 481 F.Supp. 257, 270 (D.C. 1979).

**2.** This Court takes note of the two outstanding tests—"plainly irrelevant" and "reasonably relevant." Plainly irrelevant language was used initially by the Supreme Court in *Endicott Johnson, supra.* Reasonably relevant language

subsequently was employed in *Oklahoma Press* and *Morton Salt, supra.* The question of which standard is more effective is neither before the Court nor at issue in the case.

The required disclosure, set forth above, is even more essential in this type of investigation. The Department of Energy has cited only to "possible . . . potential . . ." involvement. "Nor does our reading of the statutes mean that under no circumstances may the court inquire into the underlying reasons for the examination." *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255; *See Securities and Exchange Commission v. Howatt, supra,* 525 F.2d at 229. It is not an element of the judicial process to allow or enforce fishing expeditions. The function of this court is to determine if the agency has given reasoned consideration to all material facts and issues. This calls for insistence that the agency articulate with reasonable clarity its reasons for decision, and identify the significance of critical facts, a course which assures the agency's policies effectuate general standards, applied without unreasonable discrimination. Here, the Department of Energy puts forth only suspicions to justify its actions. It . . . believes plaintiff is engaged in the business of producing or selling petroleum or petroleum products, . . . suspects plaintiff is one in a group of companies subject to interlocking ownership or control, and . . . suspects intercompany sales and purchases in excess of limits established under the mandatory Petroleum Pricing Regulations. *Defendant's and Joinder-Defendant's List of Undisputed Facts and Issues of Law,* points (6)(7)(8). While the expectation of privacy of a regulated oil company is limited, it nevertheless exists. *See C.A.B. v. United Airlines, Inc.,* 542 F.2d 394, 399 (7th Cir. 1976). Thus, articulation of purpose is mandatory. *Far East Conference v. Federal Maritime Commission,* 337 F.2d 146, 151 (D.C.Cir.1964); *Montship Lines, Ltd. v. Federal Maritime Board, supra,* 295 F.2d 155.

It necessarily follows the burden of establishing the lawful purpose and relevancy is with the Department of Energy. When a person or company is subject to a subpoena and refuses to comply by challenging it in court, the sole means of enlightenment lies with the Energy Department. *United States v. Security State Bank and Trust, supra,* 473 F.2d at 642.

Additionally, as part of a complete inquiry, the Court must examine the good-faith pursuit of the agency. The Court should determine the agency is honestly pursuing the proper goals under its authority. *United States v. LaSalle National Bank, supra,* 437 U.S. at 313, 98 S.Ct. at 2365 (indicating that agency motives could be necessary to evaluate the factors of *Powell, supra,* including consideration of whether a subpoena was issued to harass a taxpayer); *I.C.C. v. Gould, supra,* 629 F.2d at 855.

Two specific cases may help illustrate these points. In *Trailer Marine Transport Corp. v. Federal Maritime,* 602 F.2d 379 (D.C.Cir.1979), review was sought of a Federal Maritime Commission (FMC) order directing the filing of tariffs by Petitioner, pursuant to § 21 of the Shipping and Inter-Coastal Shipping Acts, 46 U.S.C. § 820 (Supp.1980). Section 21 and its granting powers are similar to those authorized under the Department of Energy. It authorizes the FMC to "require any common carrier by water, or other person subject to this Act, . . . to file with it . . . any . . . rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this Act." The D.C. Circuit, in its opinion, observed the FMC had supported its statutory filing claim with arguments little more than perfunctory, i. e., information was being sought under § 21 because it was necessary to "help" the FMC make initial determinations of the reasonableness of Petitioner's water service. The Court then stated:

"We do not argue here that the FMC's § 21 powers can be exercised only in order to procure information immediately and exclusively relevant to a live tariff . . . investigation. . . .

This court previously has not hesitated to bar a § 21 information claim by the FMC, . . . where the agency has failed adequately to state the reason and purpose for the information sought and thus

established a basis to determine the relevance of the information to agency action and the reasonableness of the agency request .... The FMC's casual, albeit repeated assertions of a 'need to know,' with little more can not suffice.

This obligation to explain the reasons for which the FMC seeks filings under § 21 is no empty ritual or formalism, but instead is a vital necessity, inter alia, to allow a reviewing court to assure that the agency has 'given reasoned consideration to all the material facts and issues' and 'pertinent factors' at stake in the agency's order." 602 F.2d at 398–99.

*Hellenic Lines, Ltd. v. Federal Maritime Board,* 295 F.2d 138, 139, 140 (D.C.Cir.1961) (vacating a § 21 order because of cursory statement of purpose and consequent lack of standard to determine relevancy to agency action); *Montship Lines, Ltd. v. Federal Maritime Board, supra,* 295 F.2d at 155 (§ 21 order "fatally defective" because of absence of statement and consequent inability of court to determine order's "reasonableness." "Whatever may be the validity of that argument, we think it cannot excuse the absence of any indication whatsoever, as in the instant order, of the investigation's purpose since no basis is thereby afforded for determining the relevancy of the information demanded. And just as the reasons underlying agency action must appear from the agency's order, so too, we think that the statement of purpose must be apparent from the order itself and cannot be supplied by contention in the briefs"); *Far East Conference v. Federal Maritime Commission, supra,* 337 F.2d at 151 (upholding a § 21 order where the Commission made an obvious effort to comply with the *Hellenic Lines Ltd.,* and *Montship Lines, Ltd.* guidelines, i. e. clearly setting forth its purposes).

In *C.A.B. v. United Airlines, Inc.,* 542 F.2d 394 (7th Cir. 1976), the issue was whether § 407(e) of the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1377(e) (Supp. V. 1975) gave the Civil Aeronautics Board (CAB) inspection powers equivalent to a continuing general search warrant. The Federal Aviation Act entrusted the CAB with the economic regulation of air carriers. Section 407(e), provides in terms similar to the Department of Energy's authority, "the Board [CAB] shall at all times have access to all ... buildings, and equipment of any air carrier ... and to all ... records and memorandums ... and it may employ special agents ... who shall have authority ... to inspect and examine any and all such ... records and memorandums ..." In this case, the agents refused to disclose the subject of their investigation. United Airlines made available some, but not all records. The Board, claiming it was not required to specify a purpose or indeed have a purpose, sought unlimited access. The Seventh Circuit, citing *Morton Salt* and *Oklahoma Press, supra,* stated in summation the decisions uniformly require that an investigative demand be reasonably definite and relevant to some proper investigative purpose. "Further, the Board must disclose its purpose to enable a court to make a determination of relevance. Otherwise, no inquiry 'into the underlying reasons for the examination,' (citing *Powell, supra*), is possible. This obligation is, of course, not satisfied by the recital that the purpose of the investigation is to determine compliance with the law." *Id.,* at 402; *see, e. g., C.A.B. v. Frontier Airlines,* 468 F.Supp. 443, 447 (D.Col.1979).

This Court is not unaware of different principles enunciated and followed in other jurisdictions. Specifically, various Courts have ruled the investigative process could be completely disrupted if such hearings were transformed into trial-like proceedings .... This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts. *United States v. Southwest National Bank,* 598 F.2d 600, 602–03 (Em.App.1979) (quoting from *Hannah v. Larche,* 363 U.S. 420, 443–44, 80 S.Ct. 1502, 1515–16, 4 L.Ed.2d 1307 (1960)); that such would cause undue delay, *F.T.C. v. Anderson, supra,* 631 F.2d at 744–45; *United States v. Southwest National Bank, supra,* 598 F.2d at 603; *F.T.C. v. Texaco, supra,* 555 F.2d at 872, and would frustrate an important governmental inter-

est in an expeditious investigation if a party could use the subpoena hearing to raise a full panoply of objections, *F.T.C. v. Anderson, supra*, 631 F.2d at 745; *F.T.C. v. Texaco, Inc., supra*, 555 F.2d at 879. Furthermore, broadness alone is not sufficient rationale to refuse enforcement, *id.*, at 882; *United States v. Firestone Tire and Rubber Co.*, 455 F.Supp. 1072, 1083 (D.C.1978); and the standard of reasonable relevance only requires a measuring of the relevance of the request with the general purposes of the investigation, i. e., it is sufficient if the relevance can be determined from the face of the subpoena, *United States v. First City National Bank of El Paso, supra*, 598 F.2d at 599; *F.T.C. v. Texaco, Inc., supra*, 555 F.2d at 874; *United States v. Firestone Tire and Rubber Co., supra*, 455 F.Supp. at 1083.

 This Court feels, however, there exists limits on an agency's subpoena power and the duty to enforce those limits rests with the federal Courts when their process has been invoked.

> "There is no rule requiring a court to act against conscience. The proceeding [judicial enforcement of administrative subpoenas] is equitable in character. Equitable considerations should prevail. There is no power to compel a court to rubber-stamp action of an administrative agency simply because the latter demands such action."

*Chapman v. Maren Elwood College*, 225 F.2d 230, 234 (9th Cir. 1955). Thus, action by a federal Court remains discretionary with the individual presiding judge. And these are matters which raise questions essentially factual in nature. As such, a district Court's determination on these matters will not be overturned absent abuse of discretion.[3] *F.T.C. v. Shaffner*, 626 F.2d 32, 37, 38 (7th Cir. 1980).

---

**3.** "Where . . . the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse in reaching such determination,'

In conclusion, this Court will not allow the Department of Energy to bootstrap itself when justifying an investigation into every record and document plaintiff possesses. A legitimate, proper purpose and relevancy are required. The burden lies with Department of Energy.

> "Straw men are easy to knock down; it is far more difficult to provide a purpose to the eminently sensible proposition that some refinement of purpose is needed if this Court is to have any role in considering the rights of all . . . parties who stand before it in a subpoena enforcement proceeding."

*F.T.C. v. Texaco, Inc., supra*, 555 F.2d at 909 (dissenting opinion).

the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Spalding v. Spalding*, 355 Mich. 382, 94 N.W.2d 810, 811 (1959); *see generally United States v. Wright Motor Co., Inc.*, 536 F.2d 1090, 1094 n.1 (5th Cir. 1976).